## THOMSON BROTHERS ET AL. v. W. T. HUBBARD.

### Decided November 22, 1899.

**1. School Land—Fraud in Purchase from State—Who Can Complain.**

Where a purchase of school land from the State was by one acting not for himself, but collusively for others not entitled to purchase it under the law, a subsequent applicant, complying with the law, could assert such fraud to defeat the claim of the first applicant, to whom the land had been awarded.

**2. Deposition—Notice.**

A defendant who has taken, ex parte, the deposition of a plaintiff, can not introduce it against another whom he, has himself made a party, charging collusion with plaintiff, and who has had no notice of nor opportunity to cross the interrogatories.

**3. Purchase of School Land—Occupancy—Evidence.**

The affidavit of actual occupancy of school land by an applicant for its purchase is not admissible, as evidence of that fact, against another applicant who alleges fraud and collusion in such purchase.

**4. Charge—Assuming Facts.**

See charge held not to assume facts as to actual occupancy and good faith, but subject to criticism as liable to be so understood.

**5. School Land—Purchase for Home.**

To establish the right of an applicant to purchase school land, it must be made to appear that his purpose was to secure the land for a home for himself.

**6. Same—Residence.**

Where the right to purchase depends upon a previous three years residence upon the original home section, all that is necessary to be shown to authorize the purchase of another section within a radius of five miles is, that the original section is occupied by the purchaser; he need not actually reside upon it in person.

**7. Purchaser—Settlement—Mistake in Boundary.**

A settler who, attempting to occupy a survey of school land with a view to purchase it, settles in good faith, through a mistake as to boundaries, on another tract, will be protected in his claim to the land intended to be occupied.

**8. Trespass to Try Title—Prior Possession.**

Prior possession entitles the possessor to recover land against a trespasser who can not show good title.

APPEAL from Runnels. Tried below before Hon. J. O. WOODWARD.

The third assignment of error by appellant J. K. Thompson, referred to in the opinion, was as follows: "The court erred in permitting the defendant, Hubbard, to prove by R. M. Thomson, one of the plaintiffs, that section 146 was originally bought from the State by H. A. Thomson under the Act of 1881; that said Thomson paid the annual interest for some years, and defaulted in the payment of same for some years, and that it was forfeited at the Land Office on August 20, 1897. Because (1) the best evidence of said facts would be certified copies from the Land Office, and the testimony offered was secondary; because (2) said Hubbard was a junior purchaser, and could not interpose fraud and collusion, if it in fact existed; because (3) the contract of purchase by J. K. Thompson, if collusive, was only voidable and not void, and the State alone could raise the issue of fraud."

*ector & Rector,* for appellant J. K. Thompson.

*Harris & Smith,* for appellants Thomson Brothers.

*Crosson & Dickinson,* for appellee.

FISHER, CHIEF JUSTICE.—On the 24th of December, 1897, appellants Thomson Bros. filed this suit by injunction to restrain appellee, W. T. Hubbard, from trespassing upon survey No. 146, State school land, situated in Runnels County, wherein they alleged they were in actual and lawful possession of the premises by virtue of a valid lease, and alleging that Hubbard had unlawfully committed acts of trespass upon the premises, and had threatened to continue to do so.

On the 3d day of March, 1898, appellee Hubbard filed his original answer, which consisted of general and special demurrers, general denial, and plea of not guilty; and wherein he pleaded in reconvention and cross-action against the appellants Thomson; and wherein he brought the appellant J. K. Thompson into the suit. In this plea Hubbard alleged title in himself to the premises in controversy, and alleged that J. K. Thompson, acting in collusion with Thomson Bros., had pretended to purchase the land in controversy from the State, and he asked that the award of the Land Commissioner to J. K. Thompson be canceled and held for naught, and that the title be decreed in Hubbard. The case was tried in the court below before a jury, and verdict and judgment were in favor of appellee Hubbard.

Thompson, in answer to the action of Hubbard against him, seeking to recover the land, interposed a demurrer to Hubbard's answer on the ground that the State alone could complain, in the event there was fraud in the purchase of the land by J. K. Thompson from the State. The court overruled this demurrer. It appears, from the facts as alleged, that the land was awarded to J. K. Thompson in 1897, on an application made by him prior to the application of appellee, Hubbard. The Commissioner of the Land Office, awarded the land to J. K. Thompson. Appellee Hubbard alleged that the title to Thompson was void, because it was purchased in collusion with Thomson Bros. for their benefit.

It was one of the requirements of the law under which this section was purchased, that the applicant should purchase for himself. That was one of the essentials to title, and if it be true that his purchase was simulated, and not for his benefit, but for that of another, he would acquire no title. Such being the case, we think that a subsequent purchaser from the State, or one complying with the law in seeking to purchase the land, could urge the invalidity of the prior purchaser's title on the ground that it was in violation of the provision of the law noticed. We think the principles of law stated in Metzler v. Johnson, 1 Texas Civil Appeals, 137, and Hitson v. Glasscock, 2 Texas Civil Appeals, 617, apply to this question. Therefore there was no error in the ruling of the court in refusing to sustain the demurrer.

The action of the court as complained of in appellant J. K. Thompson's second assignment of error is clearly erroneous. The appellee, Hubbard, took the ex parte depositions of H. A. Thomson, one of the plaintiffs in the suit. Notice of the intention to take these depositions was not served upon appellant J. K. Thompson, and they were not crossed by him. They were admitted in evidence for the purpose of proving a collusion between the plaintiffs Thomson Bros. and the defendant, J. K. Thompson. J. K. Thompson objected to their introduction on the ground that notice of the intention to take the depositions was not served upon him, nor was he given an opportunity to file cross-interrogatories. The court overruled the objections and admitted the depositions in evidence. The depositions were admissible in evidence against Thomson Bros., but were not admissible against J. K. Thompson. They were taken under the statute which permits the ex parte depositions of an adversary to be taken without service of notice, etc. There was error in this ruling.

There was no error in the ruling of the court, as complained of in J. K. Thompson's third assignment of error. On the question of collusion, we think the testimony was admissible.

There was no error in the ruling of the court as complained of in J. K. Thompson's fourth assignment of error. As against Hubbard, the ex parte affidavit or proof of occupancy of section 150 made by J. K. Thompson, on file in the Land Office, was not admissible for the purpose of proving an actual occupancy of that section. Those papers on file in the Land Office that were necessary to be shown in order to establish title in J. K. Thompson to section 150 were admissible on the quesion of title as to that section, but the ex parte affidavit or proof of occupancy there on file, made by J. K. Thompson, would not be admissible against some one else claiming title to the land, as evidence establishing the fact that J. K. Thompson actually occupied section 150, as required by law.

The court, in the second section of its charge, instructed the jury as follows: "The undisputed evidence in the case shows that the defendant, W. T. Hubbard, made an application to purchase school land section 146, on or about the 23d of August, 1897, as an actual bona fide settler in good faith upon said section 146." We do not think this charge ground for reversing the case, but as it is reversed upon other points, we call attention to it, as calculated to impress the idea upon the jury that Hubbard was an actual bona fide settler in good faith upon the land in controversy. That was a controverted issue in the case, and in view of the meager evidence coming from Hubbard tending to prove his actual occupancy in good faith, as required by law, it is likely that this charge may have had some influence upon the jury in finding that issue in his favor.

Appellant J. K. Thompson's sixth assignment of error is as follows: "The court erred in its charge, in failing to submit to the jury the issue as to whether or not said Hubbard had made actual settlement on the land in controversy, for the purpose of making the same his home; and

in this connection, in refusing to give defendant Thompson's special charge number 2, which called the court's attention to said omission."

This is a just criticism against the charge of the court. The charge did not require the jury to find that before Hubbard could recover, it must appear that at the time of his settlement he desired to purchase the land for a home. Appellant J. K. Thompson's special charge number 2 in proper form presented this issue to the jury, and required a finding by them to the effect that Hubbard's purpose was to secure the land as a home for himself. This charge should have been given. Willoughby .v. Townsend, 45 S. W. Rep., 861, decided by this court; and Willoughby v. Townsend, recently decided by the Supreme Court.

As to the appellant J. K. Thompson, the appellee Hubbard occupied in the case the position of plaintiff, and before he would be entitled to a judgment against Thompson the burden of proof was upon Hubbard to establish the validity of his title; which must be shown by establishing that the school land in question had been properly classified, appraised, and put on the market prior to his application to purchase, and that at the time he was an actual setttler upon the same in good faith, for the purpose of making it his home.

If the proof failed in any of these respects, the appellant J. K. Thompson would be entitled to recover; and on these issues the appellant Thompson requested a charge to the effect that the burden rested upon Hubbard to establish these facts by a preponderance of evidence, which the court refused to give, and in which we think there was error.

The court, subdivisions 3 and 4 of its charge, in effect instructed the jury that the appellant J. K. Thompson would be entitled under the laws of 1897 to purchase the section in controversy only in the event he was, at the time he made his application, residing and had his home upon school land section 150. Section 150, it appears from the evidence, was duly classified, appraised, and put on the market for sale under the Act of 1881, regulating the sale of public school land; and that the same was sold according to law, and that the purchase money had been annually paid as it became due, and that J. K. Thompson owned the same under a regular recorded chain of title from the original purchaser, and owned the same since July, 1894, and that it was continuously occupied by J. K. Thompson's vendors from 1885 till he purchased in 1894; and it further appears that section 146, in controversy, is within a radius of five miles of section 150.

Section 146 it appears was, under the Act of 1881, purchased by Thomson Bros. They defaulted in the interest, and their title, in August, 1897, was forfeited by the Commissioner of the Land Office. A day or so after the land was put on the market by the Land Commissioner, J. K. Thompson made his application to purchase the same under article 4218f, page 184, of the Acts of 1897, and the land was awarded to him by the Commissioner of the Land Office. A day or so after his application to purchase, appellee Hubbard applied to purchase the land as an actual settler.

Article 4218f, the statute in question, provides, that "any bona fide purchaser who has heretofore purchased or who may hereafter purchase any land as provided herein, shall have the right to purchase other lands in addition thereto, provided that the total of his purchase shall not exceed four sections, and that it shall not include more than two sections of agricultural land, upon his making oath that he is not acting in collusion with others for the purpose of buying the land for any other person or corporation, and that no other person or corporation is interested in the purchase thereof, and if he or his vendor has already resided upon his home section for three years, or when he or his vendor or both together shall have resided upon it for three years, the additional lands may be patented any time. In all cases where a settler purchases more than one section, the land in excess of one section so purchased must be situated within a radius of five miles of the land occupied by him."

Where there has been a bona fide purchase under previous laws such as that of the vendors of J. K. Thompson of section 150, under the Act of 1881, and there has been an actual bona fide occupancy and residence upon such section for three years prior to the Act of 1897, an additional section within a radius of five miles of the land so occupied may be purchased.

The court in its charge instructed the jury that before this additional section could be purchased Thompson must be residing upon the original section 150, as his home. Where the right to purchase depends upon the previous three years residence upon the original home section, all that is necessary to be shown to authorize the purchase of another section within a radius of five miles is that the original section is occupied by the purchaser. He need not actually in person reside upon it, nor make his home there, but such original section must be occupied either by himself or some one for him.

We think no error was committed as complained of in J. K. Thompson's fourteenth assignment of error. We regard that question as in effect settled against the appellant in Chancy v. State, 84 Texas, 529.

What we have said, in effect, disposes of appellants Thomson Bros. first, second, third, fourth, and seventh assignments of error.

The question raised in Thomson Bros.' fifth and sixth assignments of error should have been submitted to the jury. If it was a fact that Thomson Bros. were in actual and exclusive possession of the land in controversy when the same was invaded by appellee Hubbard, and he was a trespasser thereon without title, the prior possession of Thomson Bros. as against him would entitle them to recover, as prayed for in their original petition. House v. Reavis, 89 Texas, 626.

The questions of fact raised by both appellants in their briefs, we leave open; but we desire to say that the evidence tending to show collusion between appellants in the purchase of the land in controversy, and the evidence of its occupancy by appellee, is somewhat meager and unsatisfactory. For errors pointed out the judgment is reversed and the cause remanded                    *Reversed and remanded.*