**WOODALL v. ADAMS et al. (No. 9142.)**

Court of Civil Appeals of Texas. Galveston.
May 9, 1928.

1. Trusts ⬤⟾357(2)—Statute does not protect one purchasing from trustee with notice of beneficiary's rights (Laws 1925, c. 120).

Laws 1925, c. 120, providing that when trust is not declared by conveyance, conveyance by trustee shall be valid, does not protect one taking conveyance from grantor whom he knows to hold the legal title as trustee for another.

2. Trusts ⬤⟾372(3)—Circumstances held to show purchaser's knowledge that vendor was trustee for another.

Circumstances as to consideration paid by grantee and consideration recited in deeds and amount for which land was previously sold *held* to tend to show that grantee had notice that grantor held legal title in trust for another.

3. Depositions ⬤⟾56(5)—Plaintiff's deposition, taken by defendant without notice to codefendants, was inadmissible against codefendants (Vernon's Sayles' Ann Civ. St. 1914, art. 3650).

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 3650, requiring notice to adversary of taking of deposition, where one defendant took plaintiff's deposition without notice to codefendants, deposition was not admissible against them.

4. Trial ⬤⟾178—Verdict should not have been directed because deposition was inadmissible without opportunity to prove matters otherwise.

Where plaintiff's deposition was inadmissible against defendants but was admitted, court should not have directed verdict for defendants on ground that it was inadmissible without giving plaintiff an opportunity to prove the same matters otherwise.

Appeal from District Court, Brazoria County; Lewis H. Jones, Special Judge.

Suit by I. Woodall against James R. Adams and others. From a judgment on a directed verdict for defendants, plaintiff appeals. Reversed and remanded.

See, also, 289 S. W. 728.

H. A. Cline, of El Paso, for appellant.
W. Owen Dailey, of Houston, and A. E. Masterson, of Angleton, for appellees.

LANE, J. This suit was brought by I. Woodall against James R. Adams, Fannie May Adams, A. L. Welch, and W. F. Sims. The suit was in the usual form of suits of trespass to try title, and for damages. The land involved was 569 acres in Wharton county, Tex.

Defendants James R. Adams and wife, Fannie May, and A. L. Welch, answered by general demurrer, general denial, and by special

---

averments that the land involved was the separate property of Fannie May Adams; that it had been purchased with her separate funds by J. C. Carrington, as her agent, who took a conveyance thereto in his own name in trust for her. They averred that Mrs. Adams was in possession of the land at the time the plaintiff Woodall claims he purchased the same from Carrington, and that Woodall knew that Carrington was holding the conveyance to the property in trust for Mrs. Adams, knew that Carrington had purchased the same with her funds, and knew that Mrs. Adams was in possession of the land at the time he took his deed from Carrington; that he paid no consideration for said conveyance; that the conveyance of the property by Carrington to Woodall was the result of a fraudulent conspiracy entered into between H. A. Cline, I. Woodall, W. F. Sims, and J. C. Carrington to defraud Mrs. Adams out of the property and to obtain title thereto for W. F. Sims. They prayed that they be discharged with their costs, and for judgment in favor of Fannie May Adams for the land involved as her separate estate, as against all persons claiming adversely to her, and for a cancellation of all deeds casting cloud upon her title to the land.

The plaintiff, Woodall, in reply to the answer of the Adamses and Welch, denied generally, and alleged that he purchased the land from Carrington in good faith believing that he was the owner thereof; that he paid value therefor without any notice of any claim on the part of Mrs. Adams.

W. F. Sims answered by demurrer and general denial, alleged that he was the owner of the land, and prayed for judgment therefor as against all parties.

A jury was chosen to try the cause, but during the progress of the trial some settlement was made by which W. F. Sims was dismissed from the case, and thereafter, and after the close of the evidence, the court overruled the motion of the plaintiff, Woodall, for an instructed verdict in his favor and sustained a motion of defendants J. R. and Fannie May Adams and Welch for an instructed verdict in behalf of Mrs. Fannie May Adams. Whereupon the jury returned its verdict as instructed, and upon such verdict the court rendered judgment for Fannie May Adams for title and possession of the land involved as her separate property. I. Woodall has appealed.

It is shown that on the 27th day of January, 1923, Mrs. Catherine Jasper, who was at that time the owner of the 569 acres of land involved in this suit, conveyed the same to James R. Adams, in part payment for which Adams executed and delivered to Mrs. Jasper his two promissory notes, one for $7,000 and the other for $10,300, and that on said date James R. Adams and wife, for the purpose of securing payment of these notes, executed and delivered to H. A. Cline, Sr.,

trustee, a deed of trust covering the 569 acres of land, for the benefit of Mrs. Jasper.

Thereafter Mrs. Jasper transferred the $10,300 note to Mrs. Fannie May Adams. Said note was the separate property of Mrs. Adams.

After the execution of said deed of trust, H. A. Cline, Sr., being absent from the state and unable to perform the duties of trustee, H. A. Cline, Jr., was duly made substitute trustee on February 6, 1924, to act in the place of H. A. Cline, Sr.

On October 24, 1917, W. F. Sims recovered a judgment against James R. Adams for the sum of $1,711, and an abstract of this judgment was duly placed of record in Wharton county, Tex., in 1921. In 1923 Sims sued James R. Adams, asking for judgment against Adams and for foreclosure of an attachment lien on the lands of Adams in Wharton county, Tex. In this suit the court rendered judgment in favor of Sims for $2,441.54, together with interest thereon from the 1st day of November, 1921, and foreclosed an attachment lien on the 569 acres of land.

The issuance of an order of sale to the sheriff of Wharton county was directed by the court for the sale of the property described in the judgment, or so much thereof as might be found necessary for the satisfaction of said judgment. The land was sold under said order by the sheriff to W. F. Sims on the 4th day of March, 1924.

H. A. Cline, Jr., substitute trustee, duly advertised the 569 acres of land for sale to satisfy the $10,300 note owned by Mrs. Fannie May Adams, and on the 4th day of March, 1924, he sold the same to J. C. Carrington for a recited consideration of $1,000, which was to be credited on said $10,300 note.

On the 3rd day of June, 1926, some two years and three months after the sale by the trustee to Carrington, Carrington by his deed of that date conveyed the 569 acres of land to appellant, I. Woodall, for a recited consideration of $1,000. It was shown that the Federal Land Bank held a first lien on the land to secure the sum of about $5,700 at the time the same was conveyed by Carrington to Woodall.

James R. Adams testified that he knew I. Woodall and W. F. Sims; that Woodall had been some kind of copartner of Sims and lived next door neighbor to him in Hillsboro. Testifying further, he said:

"I met Mr. Carrington in Mr. Cline's office. Mr. Cline was representing me at that time. I had a conversation with Mr. Carrington in Mr. Cline's presence. Mr. Cline stated to him that he had a note for foreclosure on a piece of land in Wharton county and wanted him to act as trustee for Mrs. Fannie May Adams and buy it in for her. He said, 'All right,' he did not have any objection to doing it if it would be an accommodation to Mr. Cline. I was in Wharton at the time of the foreclosure sale on March 4, 1924. I was in Wharton on the same date at the time that there was a purported

sheriff's sale under this Sims' judgment. Mr. Cline foreclosed for Mrs. Fannie May Adams first. Mr. H. A. Cline was actually present and bid it in at that foreclosure sale. Mr. Carrington was not there. Yes, sir, I mean Mr. Cline, that gentlemen sitting there (indicating); that's the man right there that bought the land in. There was an instrument drawn up there by Mr. Cline which I saw, which transferred this property from Carrington to Mrs. Adams. Mr. Cline has that instrument. He had it at the time I saw it."

Again:

"The last conversation I had with him (Carrington) as to why he did not sign the deed, he said that Mr. Cline told him not to sign the deed; that I owed him $1,000—that is, that I owed Mr. H. A. Cline, that gentlemen sitting over there, $1,000. And he says, 'He is going to take the case against you'; and I do not remember the balance of the details of the conversation. Well, he hadn't deeded the land away at that time, but he said again that he would not deed it away."

Again:

"That instrument purported to deed the land from Carrington back to Mrs. Fannie May Adams, as her separate property. I attempted to get that deed. I was not able to secure it. I attempted to get another deed from Mr. Carrington. I went to Cuero, Tex., to get that deed. At that time I took a deed with me to be signed by him. No, sir, he did not sign it; he promised to sign it. It was a holiday when I was there, and he put that up as an excuse. Mr. Carrington said that he would sign it the next day and send it to me."

On cross-examination J. R. Adams said:

"I said that I was at Wharton on the 4th day of March, 1924, the day that H. A. Cline sold this tract of land. Yes, sir; I was there. Carrington was not there. J. C. Carrington was not there. Yes, sir; H. A. Cline was in Wharton that day. I saw him there. I positively know that he was not in Kentucky that day. I saw him there in Wharton that day. H. A. Cline, Jr., was there in Wharton that day. I saw him there that day. H. A. Cline, Jr., sold the land. H. A. Cline, Jr., is that fellow's son; I say he is his son; that's what I understood. Yes, sir; H. A. Cline, Jr., was the substitute trustee in that deed of trust. The land was bought in for J. C. Carrington, and Mr. H. A. Cline, Jr., sold it. Mr. Cline, Sr., bought it in for Carrington; and Carrington was not even there. I heard that man (indicating H. A. Cline) bid it in. I stood there and heard him bid it in. Yes, sir; I am sure of that."

Mrs. Adams, testifying with reference to the sale made by H. A. Cline, trustee, to J. C. Carrington, said:

"It was my understanding that the property was to be purchased or bought in at the foreclosure sale for me. Assuming that there was a foreclosure sale upon this property under that note, no one ever gave me any money whatever to be credited upon that note. * * * I know that I did not ever get any money."

Neither H. A. Cline, Sr., H. A. Cline, Jr., nor J. C. Carrington testified in the case, and the testimony of James R. Adams and Fannie May Adams, above set out, stands undisputed.

After I. Woodall filed his suit, defendant W. F. Sims, to support his cross-action against the plaintiff, Woodall, and the other defendants, without notice to or knowledge of defendants Mr. and Mrs. Adams and A. L. Welch, had the ex parte depositions of plaintiff, Woodall, taken. In answer to the interrogations propounded, Woodall stated: That in the spring of 1926 J. C. Carrington executed to him a deed to the 569 acres of land in controversy claimed by Fannie May Adams. That he paid Carrington as consideration for the land $250 cash. That this value was placed on the 569 acres because of the fact that the Federal Land Bank had a mortgage against it for $5,500, and because there were certain abstracts of judgments against James R. Adams recorded in Wharton county and other counties in Texas, and because said James R. Adams was in litigation with other parties relative to the land in question and other lands claimed by said Adams. Such facts were known to him, and they caused him to doubt as to the title to the land which he was taking from Carrington. That he had no notice or knowledge at the time Carrington conveyed the land to him that he (Carrington) was holding the title to the land in trust for Fannie May Adams, as her agent, and that she was asserting title thereto. That he did not have notice or knowledge that Carrington and others had entered into a conspiracy to defraud Mrs. Adams out of the land, and that the deed from Carrington to him was a subterfuge in furtherance of such conspiracy. That he did not know that Carrington held the title to the land as agent of Mrs. Adams. That he purchased the land on the faith of the record, and in good faith, and paid a valuable consideration therefor, knowing that there was a first lien against it and that he might have some trouble with some of the abstracted judgment liens. That he had no notice of other vice in the title to the land.

The deposition of Woodall was returned into court after all parties had announced ready for trial, and both Woodall and Sims were permitted to introduce the same upon the trial, over the objection of the appellees upon the grounds that notice of intention to take the same was not served upon either of them, nor were they given an opportunity to file cross-interrogatories. After the introduction of the deposition of the plaintiff, Woodall, W. F. Sims entered into an agreement with the defendants Mr. and Mrs. Adams, by the terms of which he released all claims whatsoever he had against or to the 569 acres of land in question.

After the close of the evidence and the filing of the above-mentioned agreement, the trial judge, as hereinbefore stated, directed

a verdict for Mrs. Adams, and upon the verdict so returned rendered judgment for the land.

[1] Appellant insists that the trial court erred in instructing a verdict for Mrs. Adams because by the act of the Legislature of 1925, p. 305, all sales of land by trustees, without being joined by the cestui que trust, were declared to be valid sales, and by reason of said act the question of notice to appellant of the claim of Mrs. Adams became immaterial. By the act invoked by appellant it is provided that if land to be conveyed to one in trust for another, and such trust is not declared in the conveyance, a conveyance from such trustee, as trustee, to a third person, shall be held to be a valid conveyance and shall not be questioned by any one claiming as a beneficiary under such trust, or by any one claiming by, through, or under an undisclosed beneficiary.

We understand that the provisions of the act mentioned are invoked in support of the deed from Carrington to Woodall, it being shown that the land involved here was conveyed by H. A. Cline, trustee, to J. C. Carrington by a deed wherein there was no disclosure that Carrington held the title in trust for another. The contention of appellant is not without some force, but when the act invoked is read in connection with all its parts it will be made clearly to appear that the same was enacted for the purpose only of protecting persons who might, in good faith, and without notice or knowledge, for value purchase land from one holding the apparent legal title, but who in fact held such title in trust for an undisclosed beneficiary. The caption of the bill is as follows: "An act for the protection of those dealing with trustees." And the emergency clause thereto reads in part as follows:

"The fact that there is no statutory law of the state of Texas safeguarding the interest of those who deal with trustees, * * * creates an emergency," etc.

Considering the language used in the construction of the act, it could hardly be thought that the Legislature in passing the act intended it as a protection to one who might accept a conveyance from one whom he knows holds the legal title thereto as trustee for another without the joinder of the cestui que trust.

[2] If we have correctly construed the act mentioned, the sole question left for our determination of the issues raised by appellant is, was there any evidence tending to show that appellant, Woodall, in any manner, had notice or knowledge that J. C. Carrington held the legal title to the land in trust for Mrs. Adams? We think there was such evidence. There were, we think, certain facts and circumstances shown, such as the fact that the land was sold to James R. Adams by

Mrs. Jasper for $17,500; that the deed from H. A. Cline, trustee, to Carrington recited a consideration of $1,000; that the deed from Carrington to Woodall recites a consideration of $1,000, while Woodall testified that as a matter of fact he paid only $250 to Carrington for the land. It was also shown that while the land was sold by the trustee to Carrington to satisfy a note held by Mrs. Adams, she never received anything from the sale of the land made by the trustee to Carrington. The testimony of Woodall, however, was admitted in evidence over the objection of appellees, and, if permitted to stand, would raise an issue as to whether Woodall had notice or knowledge that Carrington held the title to the land in trust for Mrs. Adams. The issue so raised was one to be decided by the jury, and not by the judge; therefore the trial judge erred in instructing a verdict for Mrs. Adams.

[3] From the fact that the trial judge admitted the depositions of Woodall in evidence and after the settlement agreement between Sims and the appellees of all issues between them were made known to him, he instructed a verdict for appellee Mrs. Adams, indicates that the judge concluded that the deposition of Woodall was inadmissible as against Mrs. Adams, and that its exclusion left no issue for the jury to decide. We think the deposition was clearly inadmissible as against appellees.

By article 3650, Vernon's Sayles' Civil Statutes 1914, one party to a pending suit is authorized to take the deposition of a witness after giving written notice to his adversary or his attorney of his purpose five days before the issuance of a commission. As already stated, no notice of the intention to take the deposition of Woodall was served on either of the appellees. An ex parte affidavit of one party to a suit is not admissible in evidence against an adverse individual party, where the latter had no opportunity to file cross-interrogatories. Veck v. Culberston (Tex. Civ. App.) 57 S. W. 1114; Thomson v. Hubbard, 22 Tex. Civ. App. 101, 53 S. W. 841.

[4] While we hold that the deposition of Woodall was inadmissible as against appellees and should not have been admitted as against them, we think its admission misled appellant into the belief that it would be considered by the court in his behalf, and its withdrawal left him without any evidence upon a vital issue and perhaps without an opportunity to otherwise make proof of the matters inquired about in the propounded interrogatories. We do not think appellant should be so entrapped.

For the reasons pointed out, we think the judgment should be reversed and the cause remanded for another trial; and it is accordingly so ordered.

Reversed and remanded.