**SHENANDOAH ASSOCIATES,**
**Appellant,**

v.

**J & K PROPERTIES, INC., Appellee.**

v.

**HOME SAVINGS ASSOCIATION FAMILY DEVELOPMENT CORPORATION, A–1 Inc., and John Bushman, Appellees.**

No. 05–85–00629–CV.

Court of Appeals of Texas, Dallas.

March 31, 1987.

On Motion for Rehearing Oct. 6, 1987.

Rehearing Denied Nov. 9, 1987.

Royal H. Brin, Jr., Dallas, for appellant.

Jordan, Dunlap & Prather, Robert C. Prather, Dallas, Don Windle, Denton, for appellees.

Before STEPHENS, STEWART and HOLLINGSWORTH[1], JJ.

STEPHENS, Justice.

This multiple-party suit was brought by Shenandoah Associates, the dissatisfied purchaser of a mobile home park in Odessa, Texas. Shenandoah seeks rescission and damages under the Texas Deceptive Trade Practices Act of the Business and Commerce Code as amended in 1979. After a jury trial of several weeks, and the submission of several hundred special issues, the trial court entered its judgment rescinding the sale of the park from J & K to Shenandoah, yet charging Shenandoah with liability for the unpaid balances of the first and second mortgages, and awarding attorney's fees against Shenandoah for having brought its suit in bad faith and for the purposes of harrassment against all defendants except J & K.

---

1. The Honorable Cynthia Hollingsworth, Justice, concurred in the result of this opinion prior to the end of her term.

On appeal, Shenandoah presents twelve points of error for our consideration. J & K Properties, Inc., a co-appellant, presents seven points of error, and Home Savings Association, Family Development Corporation, A–1 Inc., and John Bushman, appellees, present one cross-point. We agree with Shenandoah's points of error number one, and number six, and we agree with J & K's point of error number one, accordingly, we reverse the judgment of the trial court and remand the case for a new trial.

## CHRONOLOGY OF FACTS

In 1982 J & K held legal title to the park, encumbered by a first mortgage of $830,-000.00, in favor of Home Savings. This note was guaranteed by Bill J. Jacobson, President of J & K. Coupled with the loan, J & K had granted an exclusive sales contract to Family Development for sale of the park. At the time of this transaction, John Bushman solely owned Home Savings and A–1 Inc., and Home Savings was the sole owner of Family Development.

Later in 1982, negotiations for the sale of the park began between J & K and Steven K. Babbidge & Associates. These negotiations fell through in December 1982. Later negotiations began between Bushman's group and Babbidge without the participation of J & K. These negotiations resulted ina sale of the park to Babbidge, or its nominee, and at closing, January 4, 1983, Shenandoah, Babbidge's nominee, became the title holder of the park.

The sale was consummated by the payment of $135,000.00 in cash, the execution by Shenandoah of a six-months second lien note for $135,000.00 payable to J & K, which was simultaneously endorsed to Family Development, and the assumption by Shenandoah of the $830,000.00 note to Home.

Some time after closing, and after Shenandoah occupied the property, difficulties arose between the parties resulting in this suit. Prior to the filing of the suit, J & K filed for bankruptcy; however, before the trial of the case, the automatic stay afforded J & K by the bankruptcy filing, was lifted by the Federal Court.

## TRIAL COURT'S JUDGMENT

The trial court's final judgment is paraphrased as follows:

1. A–1 Inc., Home Savings, and Bushman were awarded a take-nothing judgment as to Shenandoah.

2. A–1 Inc., was awarded judgment against Shenandoah for: (a) attorney's fees of $173,003.00, expenses of $10,-852.81; (b) if appealed to this court, an additional $27,000.00 attorney's fees, and an additional $5,000.00 expenses; and (c) if appealed to the Texas Supreme Court, an additional $13,500.00 as attorney's fees, and an additional $2,500.00 as expenses.

3. Bushman was awarded the same judgment against Shenandoah as was A–1 Inc.

4. Home Savings was awarded judgment against Shenandoah for $893,-047.35, as the sum due on the principal and interest of the note through August 1, 1984, together with pre-judgment and post judgment interest on the principal balance of the note, together with foreclosure of its lien on the park, together with a money judgment for any deficiency resulting from the sale of the property, and ordering reimbursement to Shenandoah for any excess of the sale over the debt. Home, additionally, was awarded the same sum as was awarded A–1 Inc., and Bushman, for its attorney's fees and expenses.

5. Family Development was awarded judgment against Shenandoah for $155,240.32 on its note through August 1, 1984, together with pre-judgment and post-judgment interest on the balance of its $135,000.00 note. Additionally, Family was awarded foreclosure of its lien and a money judgment against Shenandoah for any deficiency resulting from the sale, and likewise ordering the payment of any excess received from the sale to Shenandoah. Family was also awarded judgment against Shenandoah for its attorney's fees of $179,603.00, together with its

expenses of $52,325.14, and the additional sums of $27,000.00 and $13,500.00, together with $5,000.00 and $2,500.00 respectively for attorney's fees and expenses in the event of an appeal.

6. Shenandoah was awarded judgment against J & K rescinding:

(a) Sale of the mobile home park.

(b) Sale of certain personalty contemporaneously made with the sale of the park.

(c) Assignment of certain leases coupled with the sale of the park.

(d) Assignment of warranties coupled with the sale of the park.

(e) An agreement between J & K, Bill Jacobson and Shenandoah.

7. Bushman and J & K were also awarded post-judgment interest of 10% on their attorney's fees and expenses awards.

8. Court costs were taxed 80% against Shenandoah and 20% against J & K.

## SHENANDOAH'S CLAIMS

Shenandoah's first point of error complains that the trial court erred by granting partial rescission of the sale of the park instead of full rescission, and by not placing all the parties in the status quo, because partial rescission, not recognized under Texas law, leaves the Bushman group with all the benefits of the transaction.

Shenandoah argues that the rescission is not complete because it still requires Shenandoah to pay $830,000 evidenced by the assumption agreement and the second lien promissory note for $135,000.

## RESCISSION

Rescission is an equitable remedy that may be granted upon certain grounds, such as fraud. *Boyter v. MCR Construction Co.*, 673 S.W.2d 938, 941 (Tex.App.—Dallas 1984, writ ref'd n.r.e.). The defrauded purchaser is put to an election whether he will keep the property and recover damages, or rescind the sale and return the property while recovering the value he has parted with. *O'Con v. Hightower*, 268 S.W.2d

321, 322 (Tex.Civ.App.—San Antonio 1954, writ ref'd). This court in *Boyter* set out the prerequisites to the granting of rescission:

To be entitled to the equitable remedy of rescission, however, a party must show either (1) that he and the other party are in the *status quo, i.e.*, that he is not retaining benefits received under the instrument without restoration to the other party, *Texas Co. v. State*, 154 Tex. 494, 281 S.W.2d 83, 91 (1955); *Freyer v. Michels*, 360 S.W.2d 559, 562 (Tex.Civ. App.—Dallas 1962, writ dism'd), or (2) that there are special equitable considerations that obviate the need for the parties to be in the *status quo*, *Turner v. Agricultural Credit Corp.*, 601 S.W.2d 61, 65 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.); *see also Texas Employers Insurance Association v. Kennedy*, 135 Tex. 486, 143 S.W.2d 583, 585 (1940).

*Boyter*, 673 S.W.2d at 941.

Shenandoah complains that the court's judgment requiring it to give up the property, but to continue to pay on the assumption agreement of the first lien note and to pay the second lien note constitutes a partial rescission.

A down-payment of $270,000 was required to purchase the Park. On January 4, 1983, at closing, Shenandoah paid $135,000 in cash and signed a promissory note payable to J & K secured by a second lien deed of trust in which it unconditionally promised to pay J & K $135,000. The second lien deed of trust specifically states that the note "represents a portion of the consideration ... for the purchase of the property" described in the deed. Simultaneously with closing, the second lien note was endorsed by J & K, stating that it did "sell, transfer, assign and set over the within note together with all liens securing same to Family Development" with recourse. When the trial court granted the rescission of the sale of the property to Shenandoah, it should have cancelled Shenandoah's indebtedness on the second lien note, to return the parties to the *status quo. See Boyter*, 673 S.W.2d at 941. This

lien is an indivisible part of the contract for the purchase of the Park; the rescission without cancellation of the note constitutes a prohibited "partial rescission." *Raney,* 504 S.W.2d at 534. Having elected to sue for rescission, Shenandoah should have recovered the value it parted with. *O'Con,* 268 S.W.2d at 322.

In addition to the cash payment and the execution of the second lien note, Shenandoah assumed the unpaid balance of the original first lien note in the amount of $830,000.00, as a part of the consideration of the sale. Generally, an assumption agreement in a deed of conveyance creates a new contract under which the one making the assumption becomes the principal obligor and the original maker becomes the surety. *Straus v. Brooks,* 136 Tex. 141, 148 S.W.2d 393, 396 (Tex.Com.App.1941). The agreement is an unconditional contract within itself; an unconditional promise to pay the debt. *See Barber v. Federal Land Bank,* 204 S.W.2d 74, 78 (Tex.Civ.App.— Texarkana 1947, writ ref'd n.r.e.). The promisor has made the debt his own, has become primarily liable for its discharge, and has assumed an independent duty of payment, irrespective of the liability of the principal debtor. *Id.* However, when the assumption of an agreement is a part of the consideration of the underlying contract, the cancellation and rescission of the underlying contract creates a demand that equity be performed by cancelling the assumption agreement. When the equitable relief of rescission is granted the original status of the parties must be restored. *See Texas Co. v. State,* 154 Tex. 494, 281 S.W. 2d 83, 91 (1955); *Boyter,* 673 S.W.2d 941; *Proctor v. Green,* 673 S.W.2d 390, 393 (Tex.App.—Houston [1st Dist.] 1984, no writ).

A recognized exception to this rule is when the purchaser terminates the contract and the court has examined the circumstances and determined that it would be more equitable to grant the recission without the complete or partial restoration of the consideration received by the purchaser while in possession of the purchased item. *See Boyter,* 673 S.W.2d at 941; *Turner v. Houston Agricultural Credit*

*Corp.,* 601 S.W.2d 61, 65 (Tex.Civ.App.— Houston [1st Dist.] 1980, writ ref'd n.r.e.). We hold that the trial court properly considered the circumstances of this case and found it was more equitable not to require Shenandoah to return to J & K the rental payments and other monies obtained while it was in control of the property.

The trial court granted Shenandoah's request for the equitable relief of rescission; therefore, it follows, and equity dictates, that the Shenandoah should be returned to the *status quo* by requiring J & K to return the rescinded sales agreement purchase money in the sum of $135,000.00, by cancelling the second lien note of $135,000, and by cancelling Shenandoah's assumption agreement of the original loan. Shenandoah's first point of error is granted.

Shenandoah frames its second point of error as follows:

There being no finding by the trial court in the one final judgment required by law that this action was groundless and brought in bad faith, or brought for the purpose of harassment, the trial court erred in rendering judgment against Shenandoah for the Defendants' attorney's fees and court costs.

The facts giving rise to this cause of action occurred after the 1979 amendment ot § 17.50(c) of the Texas Deceptive Trade Practices Act which states:

(c) On a finding by the court that an action under this section was groundless and brought in bad faith, or brought for the purposes of harassment, the court shall award the defendant reasonable and necessary attorney's fees and court costs.

TEX.BUS. & COM.CODE ANN. § 17.50(c) (Vernon Supp.1986).

Prior to the 1979 amendment, the courts consistently construed section 17.50(c) to require a jury finding of bad faith or harassment *and* a court finding of groundlessness. *Computer Business Services, Inc. v. West,* 627 S.W.2d 759, 761 (Tex.App. —Tyler 1981, writ ref'd n.r.e.); *Brunstetter v. Southern,* 619 S.W.2d 557, 560 (Tex. Civ.App.—San Antonio 1981, writ ref'd n.r.

e.); *Genico Distributors, Inc. v. First National Bank,* 616 S.W.2d 418, 420 (Tex.Civ. App.—Texarkana 1981, writ ref'd n.r.e.). However, in *Leissner v. Schott,* 668 S.W.2d 686 (Tex.1984) a case arising after the 1979 amendment, the jury found no violation of the Deceptive Trade Practice Act, but did find that the suit was brought in bad faith and for purposes of harassment. The trial court refused to award attorney's fees because the court did not find the suit to be groundless. On appeal, the Court of Appeals construed the amended act to allow fees based on (a) a finding of harassment, or (b) a finding that the suit was groundless and brought in bad faith. Because there was a jury finding of harassment, the Court of Appeals awarded attorney's fees. On review by the Supreme Court, the Court of Appeals decision was upheld, although the Supreme Court declined to decide the question of whether the Court of Appeals was correct in its interpretation that issues of bad faith and harassment are for the jury, and reserved judgment on the issue of whether section 17.50(c) requires the trial court to make *all* the necessary findings. Likewise, in *Wickersham Ford, Inc. v. Orange County,* 701 S.W.2d 344, 350 (Tex. App.—Beaumont 1985, no writ), an award of attorney's fees based solely on a jury finding of harassment was upheld. In the case at bar, the jury did specifically find that Shenandoah's suits against all appellees were brought in bad faith and for the purpose of harassment. Under *Leissner v. Schott,* 668 S.W.2d at 686 a jury finding of harassment alone is enough to entitle a defendant to an award of attorney's fees under section 17.50(c).

Furthermore, as to Shenandoah's argument that attorney's fees were improperly awarded, findings of fact and conclusions of law concerning the award of attorney's fees were neither requested nor entered. Shenandoah argues that it was not required to request findings of fact and conclusions of law since the trial was by jury. Ordinarily this is correct. However, the parties and attorneys all agreed to an order that "the fact issues of reasonable and necessary attorney's fees and expenses incurred in prosecuting or defending these actions and counterclaims, including representation at various appellate court levels, *shall be tried to the court in a separate trial,* such trial to be set by the court." (emphasis added). Such a trial was held by the court on the issue of attorney's fees, therefore, since Shenandoah failed to request any findings of fact or conclusions of law on the separate attorney's fees trial to the judge, the trial court judgment implies all necessary fact-findings in support of its judgment. *Rosestone Properties, Inc. v. Schliemann,* 662 S.W.2d 49, 51 (Tex.App. —San Antonio 1983, writ ref'd n.r.e.). The trial court did award attorney's fees in its judgment. All findings of fact and conclusions of law necessary to uphold the attorney's fees award are therefore deemed in favor of the judgment. Shenandoah's second point of error is overruled.

In point of error number six, Shenandoah complains that testimony by an expert witness far exceeded the boundaries of a pretrial order, which limited the expert's testimony to reasonable attorney's fees and the amount of damages. Shenandoah asserts that the testimony was prejudicial because, contrary to the court's order, the witness testified freely concerning the reliance of the parties on certain documents, proper documents for a closing, the lack of certain documents at the closing, the generally accepted interpretation of documents and their meanings, whether the attorney for Shenandoah acted with propriety, and the witness also interpreted the Canons of Ethics. These were only a few of the areas of dispute on which the witness testified. We are mindful of the general proposition that the determination of the admissibility of opinion testimony is a matter within the sound discretion of the trial court, which will not be disturbed on appeal absent a showing of abuse. *UMC, Inc. v. Coonrod Electric Co.,* 667 S.W.2d 549, 559 (Tex.App. —Corpus Christi 1983, writ ref'd n.r.e.). However, we are of the opinion that in light of the complexity of the case before us, admission of the testimony of this particular witness, far in excess of the limitations placed upon him by the trial court's pretrial order, was highly prejudicial and

the trial court abused its discretion by admitting such testimony. Appellee argues correctly that if the improper evidence given by the witness is supported by other evidence in the case, admitted without objection, or of the same character or effect, adduced or elicited by the complaining party, the error is harmless, *Drake v. Walls*, 348 S.W.2d 62, 69 (Tex.Civ.App.—Dallas 1961, writ ref'd n.r.e.); *see Missouri–Kansas–Texas Railroad Co. v. Shelton*, 383 S.W.2d 842, 848 (Tex.Civ.App.—Dallas 1964, writ ref'd n.r.e.), *cert. denied* 382 U.S. 845, 86 S.Ct. 54, 15 L.Ed.2d 85 (1965); *City of Houston v. Howe & Wise*, 323 S.W.2d 134, 138 (Tex.Civ.App.—Houston 1959, writ ref'd n.r.e.). *See Richardson v. Green*, 677 S.W.2d 497, 501 (Tex.1984); *Columbia Engineering International, Ltd. v. Dorman*, 602 S.W.2d 72, 77 (Tex.Civ.App.—Beaumont 1980, writ ref'd n.r.e.). However, appellee has not pointed out to this court what other evidence, properly admitted, would justify a finding that the testimony of this witness was harmless, and we decline to search the thirty eight hundred pages of testimony to attempt to find such other evidence. Appellant's sixth point of error is sustained.

### J & K's CLAIMS

J & K first contends that the trial court erred by admitting into evidence, depositions that were taken without notice to J & K. Notice was only given to A–1.

Texas Rule of Civil Procedure 200(2) states the notice requirements for an oral deposition:

2. *Notice of Examination: General Requirements; Notice of Deposition of Organization.*

a. Reasonable notice must be served in writing by the party, or his attorney, proposing to take a deposition upon oral examination, *to every other party or his attorney of record....*

[Emphasis added.] When other parties are not given notice of the deposition, an "ex parte" deposition is not admissible. *See Reilly v. Buster*, 125 Tex. 323, 82 S.W. 2d 931, 933 (1935); *Woodall v. Adams*, 7 S.W. 2d 922, 925 (Tex.Civ.App.—Galveston 1928,

no writ); *see also Pouncy v. Garner*, 626 S.W.2d 337, 344 (Tex.App.—Tyler 1981, writ ref'd n.r.e.).

In the present case, the trial court entered an interlocutory default judgment against J & K and the other defendants, on November 23, 1983, which: (1) rescinded the sales contract; (2) set aside the general warranty deed and bill of sale; (3) cancelled the $135,000 promissory note and second lien deed of trust; (4) cancelled the assumption agreement; and (5) ordered Shenandoah to reconvey the property to the defendants "upon receipt of the restitution and incidental damages hereafter ordered to be paid Plaintiff, by this Court." The court stated that a hearing would be held to determine the amount of damages to be paid to Shenandoah. Clearly, this interlocutory default judgment only determined J & K's liability to Shenandoah; the issue of damages was not answered. Therefore, J & K should have been given notice of the taking of depositions since it is a party to the suit in which damages were yet to be determined.

J & K objects to the admission of the deposition testimony of Steve Brindle, Stanley Black, Stephen Babbidge, Michael Jackson, and Geno Olivas. (The other depositions cited by J & K in its brief were never read into evidence and, therefore, are not crucial.) At trial, the depositions of Jackson and Olivas were read into the record without J & K asserting its notice objection. After half of Brindle's deposition had been read into the record, J & K presented its objection for lack of notice. The trial court ruled that the objection was untimely as it applied to the depositions that had already been read into the record, but stated:

The objection insofar as it relates to use of depositions to prove liability and not damages is overruled inasmuch as at the time the depositions were taken, liability had been determined by default judgment against J & K Properties, Incorporated, and when the Court vacated interlocutory default judgment the day before trial commenced J & K Properties, Incorporated, withdrew its motion

for continuance, which would have been the proper remedy to allow the retaking of the depositions.

As to the objection insofar as it relates to use of depositions or portions thereof not yet read before the jury and insofar as they relate to the issue of damages against J & K Properties, Incorporated, the Court takes that under advisement and carries it and will make a decision later on that issue.

You've preserved your objection on the record as to all portions not yet read, any portion read will be read over your objection, over your motion to strike. If the Court determines that you are correct, it will take such action as necessary later in the trial or after the verdict to prevent any harm with respect to damages.

The court made no further ruling on the admissibility of the depositions as they relate to the issue of damages.

J & K re-urged its objection to the remainder of Brindle's deposition and to the depositions of Black and Babbidge. Upon reviewing the depositions that were admitted into evidence without objection and those that were admitted over objection, we find damaging evidence that was admitted before the jury that is not "offset" by properly admitted deposition testimony. *See Richardson,* 677 S.W.2d at 501. (eg. Brindle had testified about defectively built septic tanks before the objection, and continued to testify concerning various other defective septic tanks after the objection. Brindle then went on to describe defective water lines. Black testified that he was in charge of collecting rent, maintenance, and leasing. He stated that the rent receipt books were "moderately" accurate; that the water lines were not properly attached at the faucets; and there was a great danger of the lines "breaking off at the main," causing the water to be cut off for repairs "several times" due to this fault.)

We hold that the remaining portion of Brindle's deposition and Black's deposition were improperly admitted for purposes of determining damages after proper objection by J & K. Brindle and Black's deposition testimony was damaging to J & K as it presented evidence of bad workmanship and improper bookkeeping that supports Shenandoah's request for damages.

Having made the determination that this deposition testimony was improperly admitted, absent notice to J & K, and being unable to conclude that such admission was harmless error, we sustain J & K's first point of error.

The judgment of the trial court is reversed, and the cause is remanded for a new trial.

Before STEPHENS, STEWART and ROW[1], JJ.

### ON MOTION FOR REHEARING

STEWART, Justice.

We grant the motion for rehearing filed by Home Savings Association, Family Development Corporation, A–1, Inc., and John Bushman (the Bushman group). We deny the motion for rehearing filed by J & K Properties, Inc. (J & K), and we deny the motion for rehearing filed by Shenandoah Associates (Shenandoah). Accordingly, we set aside our former judgment and enter judgment in accordance with this opinion.

Shenandoah originally sued J & K and Home Savings Association (Home), alleging breach of contract, misrepresentations, deceptive trade practices, breaches of warranty, and fraud by J & K in the construction and sale of a mobile home park to Shenandoah and by Home in relation to the assumption agreement between Shenandoah and Home, whereby Shenandoah assumed J & K's indebtedness on the park. Later Shenandoah added as defendants Family Development Corporation (Family), A–1, Inc. (A–1), and John Bushman. By amended petition, Shenandoah added a suit for civil conspiracy against all five defendants. The Bushman group counterclaimed for attorneys' fees and court costs on grounds that Shenandoah's deceptive trade practic-

---

1. The Honorable Cynthia Hollingsworth, Justice, concurred in the results of the former opinion prior to the end of her term.

The Honorable Gordon Rowe participated in this opinion on rehearing.

es claim against them was groundless and brought in bad faith or brought for purposes of harassment. In addition, Home sued for judgment and foreclosure of lien under the note and deed of trust assumed by Shenandoah, and Family sued for the same relief under the second lien note executed by Shenandoah at closing. After a jury trial of several weeks, the trial court entered its judgment rescinding the sale of the park from J & K to Shenandoah, yet charging Shenandoah with liability for the unpaid balances of the first and second mortgages, held by Home and Family, respectively, and awarding attorney's fees against Shenandoah to Home and Family on their respective notes and to A–1 and John Bushman for having brought its suit in bad faith and for the purposes of harassment against them.

On appeal, Shenandoah presents twelve points of error for our consideration. J & K Properties, Inc., a co-appellant, presents seven points of error, and Home Savings Association presents one cross-point. We agree with Shenandoah's point of error number four and reverse the trial court's award of expenses to the Bushman group. In all other respects, the trial court's judgment is affirmed.

## CHRONOLOGY OF FACTS

In 1982, J & K held legal title to the mobile home park, encumbered by a first mortgage of $830,000 in favor of Home. This note was guaranteed by Bill J. Jacobson, president of J & K. Coupled with the loan, J & K had granted an exclusive sales contract to Family for sale of the park. At the time of this transaction, John Bushman solely owned Home and A–1, and Home was the sole owner of Family.

Later in 1982, negotiations for the sale of the park began between J & K and Steven K. Babbidge & Associates (Babbidge). These negotiations fell through in December 1982.

Later negotiations began between Home, A–1, and J & K, through its broker, Family, and Babbidge, but without the participation of John Bushman. These negotiations resulted in a sale of the park to Babbidge, or its nominee, and at closing, January 4, 1983, Shenandoah, Babbidge's nominee, became the title holder of the park. The sale was consummated by the payment of $135,000 in cash, the execution by Shenandoah of a six-months' second lien note for $135,000 payable to J & K, which J & K simultaneously endorsed to Family, and the assumption by Shenandoah of the $830,000 note to Home.

Sometime after closing, and after Shenandoah occupied the property, difficulties arose between the parties resulting in this suit. Prior to the filing of the suit, J & K filed for bankruptcy; however, before the trial of the case, the automatic stay afforded J & K by the bankruptcy filing was annulled by the federal court only as to Shenandoah's causes of action against J & K.

## TRIAL COURT'S JUDGMENT

The trial court's final judgment is paraphrased as follows:

1. Shenandoah received a take nothing judgment as to A–1, Home, Family, and Bushman.

2. A–1 was awarded judgment against Shenandoah for: (a) attorney's fees of $173,003, expenses of $10,852.81; (b) if appealed to this court, an additional $27,000 attorney's fees, and an additional $5,000 expenses; and (c) if appealed to the Texas Supreme Court, an additional $13,500 as attorney's fees, and an additional $2,500 as expenses.

3. Bushman was awarded the same judgment against Shenandoah as was A–1.

4. Home was awarded judgment against Shenandoah for $893,047.35, as the sum due on the principal and interest of its note through August 1, 1984, together with prejudgment and postjudgment interest on the principal balance of the note, together with foreclosure of its lien on the park, together with a money judgment for any deficiency resulting from the sale of the property, and ordering reimbursement to Shenandoah for any excess of the sale over the debt.

Home, additionally, was awarded the same sum as was awarded A–1 and Bushman for its attorney's fees and appellate expenses but received $48,825.14 for expenses in the trial court.

5. Family was awarded judgment against Shenandoah for $155,240.32 on its note through August 1, 1984, together with prejudgment and post-judgment interest on the balance of its $135,000 note. Additionally, Family was awarded foreclosure of its lien and a money judgment against Shenandoah for any deficiency resulting from the sale, and the judgment likewise ordered the payment of any excess received from the sale to Shenandoah. Family was also awarded judgment against Shenandoah for its attorney's fees of $179,603, together with its expenses of $52,325.14, and the additional sums of $27,000 and $13,500, together with $5,000 and $2,500 respectively for attorney's fees and expenses in the event of an appeal.

6. A–1, Bushman, Home, and Family were awarded their taxable costs of court.

7. Shenandoah was awarded judgment against J & K rescinding:

(a) Sale of the mobile home park.

(b) Sale of certain personalty contemporaneously made with the sale of the park.

(c) Assignment of certain leases coupled with the sale of the park.

(d) Assignment of warranties coupled with the sale of the park.

(e) An agreement between J & K, Bill Jacobson, and Shenandoah.

8. Bushman and A–1 were also awarded post-judgment interest of 10 percent on their attorney's fees and expenses awards.

9. Court costs were taxed 80 percent against Shenandoah and 20 percent against J & K.

## SHENANDOAH'S CLAIMS

Shenandoah's first point of error complains that the trial court erred by granting partial rescission of the sale of the park instead of full rescission, and by not placing all the parties in the status quo, because partial rescission, not recognized under Texas law, leaves the Bushman group with all the benefits of the transaction. Shenandoah argues that the rescission is not complete because the judgment still requires Shenandoah to pay $830,000 evidenced by the assumption agreement and the second lien promissory note for $135,000.

For purposes of deciding this point, we assume, without deciding, that the trial court properly rescinded the conveyance of title to the park from J & K to Shenandoah. We agree with Shenandoah that as between it and J & K, upon this rescission, it is entitled to recover all the consideration it paid for the park. However, it does not necessarily follow that Shenandoah is entitled to cancellation of its liability for the first lien note under the assumption agreement between it and Home nor to cancellation of the second lien note for $135,000 held by Family. We will address each of the notes separately.

### The First Lien Note

■ In this case, we have a written assumption agreement executed by the grantor, the grantee, and the creditor. When Shenandoah assumed the unpaid balance of the original first lien note in the amount of $830,000 as part of the consideration that it gave to J & K for sale and conveyance of the park, Shenandoah, in effect, held back that portion of the consideration which was due Home from the purchase price. It undertook to pay Home as holder of the note, not to benefit J & K, but in order to discharge an incumbrance which Home held against the property being purchased. *Hill v. Hoeldtke*, 104 Tex. 594, 142 S.W. 871 (1912). In obligating itself to pay Home, Shenandoah was not obligating itself to pay a debt it owed J & K; rather, it was obligating itself to pay a debt to J & K's creditor, Home, and when Home agreed with J & K to accept Shenandoah's promise to pay the note, Shenandoah became the principal debtor on the note and J & K became a surety for the debt.

*Id.* at 873, 142 S.W. 871. The arrangement embraced all the elements of a binding contract. There was valuable consideration and mutuality of obligation. Shenandoah was no longer a debtor of J & K; rather, it was a debtor of Home. J & K has no cause of action against Shenandoah on the note unless Shenandoah fails to pay Home, and then only upon the principle that the surety may recover from the debtor whose debt he has been compelled to pay. *Id.*

Thus, the assumption agreement created a separate unconditional contract within itself. *Straus v. Brooks*, 136 Tex. 141, 146, 148 S.W.2d 393, 396 (Tex.Com.App.1941). Shenandoah made the debt its own and assumed an independent duty of payment, irrespective of the liability of the original debtor, J & K. *Barber v. Federal Land Bank*, 204 S.W.2d 74, 78 (Tex.Civ.App.— Texarkana 1947, writ ref'd n.r.e.).

▆▆▆ Nevertheless, Shenandoah contends that because J & K's misrepresentations and/or breaches of warranty justified rescission of the sale, it should not be liable under the assumption agreement. This might be a valid argument if Shenandoah had obtained affirmative findings on its allegations of conspiracy or at least concerted action by J & K and the Bushman group in inducing Shenandoah to purchase the property. However, the jury found to the contrary. While it is true that the lender's actionable fraud constitutes a legal basis for the borrower's avoidance of the transaction, *Turner v. Houston Agricultural Credit Corp.*, 601 S.W.2d 61, 65 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.), the jury in this case exonerated Home from any actionable misrepresentation, fraud, breach of warranty, or deceptive trade practice in either the sale or financing of the park. We have found no authority for holding that the original debtor's fraud may be used as a defense to the assumptor's liability on a note in the absence of any wrongdoing by the creditor. To the contrary, this court has held that any alleged fraud of the original maker is *not* a defense to the assumptor's liability on a note. *Presidential Village, Ltd. v. Lone Star Gas Co.*, 585 S.W.2d 335 (Tex.

Civ.App.—Dallas 1979, no writ). In that case, the separate assumption agreement released the original makers of the note. In this case, Home did not release J & K, but we do not consider the release of the original maker as critical to the holding in *Presidential Village*, because the court there relied in part on language from *Hill v. Hoeldtke*. The court in *Presidential Village* set forth the following quotation from the *Hill* case:

> In those cases where it is held if the mortgagee has in some manner acted upon the promise of the grantee that the liability of the latter becomes fixed, it is not claimed that this action must be such as would create an estoppel against the grantee. It seems to be sufficient if it is such as to evince an acceptance or an adoption of the promise by the mortgagee.

*Id.* at 336, (quoting *Hill v. Hoeldtke*, 142 S.W. at 874–75). Here, Home clearly exhibited by its execution of the assumption agreement its acceptance of Shenandoah's promise to pay the note at issue. It further relied and acted on Shenandoah's assumption of J & K's indebtedness by: (1) waiving Home's due-on-sale clause in the note and (2) forebearing to exercise its right to enforce the admittedly delinquent note against the original obligor, J & K, and its guarantors.

Accordingly, we hold that Shenandoah cannot rely on its grounds against J & K for rescission of the sale as a defense against its liability to Home on the first lien note. For the above reasons, we further hold that the assumption agreement was separate and divisible from the sale transaction.

### The Second Lien Note

A down-payment of $270,000 was required to purchase the park. On January 4, 1983, at closing, Shenandoah paid $135,-000 in cash and signed a promissory note payable to J & K secured by a second lien deed of trust on the park in which it unconditionally promised to pay J & K $135,000. The second lien deed of trust specifically states that the note "represents a portion

of the consideration ... for the purchase of the property" described in the deed. Simultaneously with closing, the second lien note was endorsed by J & K, stating that it did "sell, transfer, assign and set over the within note together with all liens securing same to Family Development" with recourse. When the trial court granted the rescission of the sale of the property, Shenandoah maintains that it should have cancelled Shenandoah's indebtedness on the second lien note to return the parties to the status quo. *Boyter v. MCR Construction Co.*, 673 S.W.2d 938, 941 (Tex.App.—Dallas 1984, writ ref'd n.r.e.).

■ On the other hand, Family argues that it took the second-lien note for value, in good faith, and without notice that it was overdue or had been dishonored or of any defense against or claim to it on the part of any person and, consequently, it is a holder in due course. TEX.BUS.COM. CODE ANN. § 3.302(a) (Vernon 1968) (Tex. UCC). Every note holder is presumed to be a holder in due course of the instrument absent evidence to the contrary. *Jonwilco, Inc. v. C.I.T. Financial Services*, 662 S.W. 2d 664, 666 (Tex.App.—Houston [14th Dist.] 1983, no writ); *Favors v. Yaffe*, 605 S.W.2d 342, 343 (Tex.Civ.App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.).

Section 3.305 of the Texas Business and Commerce Code states in pertinent part:

To the extent that a holder is a holder in due course he takes the instrument free from

. . . . .

(b) all defenses of any party to the instrument with whom the holder has not dealt except

. . . . .

(2) such ... illegality of the transaction, as renders the obligation of the party a nullity; and

(3) such misrepresentation as has induced the party to sign the instrument with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms.

TEX.BUS. & COM.CODE ANN. § 3.305 (Vernon 1968) (Tex.UCC).

■ Although Shenandoah attempted to prove that Family had knowledge of or had participated in some misrepresentation, fraud, or deceptive trade practice that, within the meaning of section 3.305(b)(3), deprived it of treatment as a holder in due course, the jury found Family innocent of any wrongdoing. We conclude there is no basis for denying Family treatment as a holder in due course. Consequently, Shenandoah's defenses against liability to J & K cannot be urged to defeat liability to Family. *Id.*

For all of the foregoing reasons we hold that the trial court properly granted judgment to Home and Family for debt and foreclosure of lien on their respective notes. Shenandoah's first point of error is overruled.

Shenandoah frames its second point of error as follows:

There being no finding by the trial court in the one final judgment required by law that this action was groundless and brought in bad faith, or brought for the purpose of harassment, the trial court erred in rendering judgment against Shenandoah for the Defendants' attorney's fees and court costs.

The facts giving rise to this cause of action occurred after the 1979 amendment to section 17.50(c) of the Texas Deceptive Trade Practices Act, which states:

On a finding by the court that an action under this section was groundless and brought in bad faith, or brought for the purposes of harassment, the court shall award the defendant reasonable and necessary attorneys' fees and court costs.

TEX.BUS. & COM.CODE ANN. § 17.50(c) (Vernon Supp.1986).

■ Prior to the 1979 amendment, the courts consistently construed section 17.-50(c) to require a jury finding of bad faith or harassment *and* a court finding of groundlessness. *Computer Business Services, Inc. v. West*, 627 S.W.2d 759, 761 (Tex.App.—Tyler 1981, writ ref'd n.r.e.); *Brunstetter v. Southern*, 619 S.W.2d 557, 560 (Tex.Civ.App.—San Antonio 1981, writ

ref'd n.r.e.); *Genico Distributors, Inc. v. First National Bank,* 616 S.W.2d 418, 420 (Tex.Civ.App.—Texarkana 1981, writ ref'd n.r.e.). However, in *Leissner v. Schott,* 668 S.W.2d 686 (Tex.1984), a case arising after the 1979 amendment, the jury found no violation of the Deceptive Trade Practices Act, but did find that the suit was brought in bad faith and for purposes of harassment. The trial court refused to award attorney's fees because the court did not find the suit to be groundless. On appeal, the court of appeals construed the amended act to allow fees based on (a) a finding of harassment, or (b) a finding that the suit was groundless and brought in bad faith. Because there was a jury finding of harassment, the court of appeals awarded attorney's fees. On review by the supreme court, the court of appeals decision was upheld, although the supreme court declined to decide the question of whether the court of appeals was correct in its interpretation that issues of bad faith and harassment are for the jury and reserved judgment on the issue of whether section 17.-50(c) requires the trial court to make *all* the necessary findings. Likewise, in *Wickersham Ford, Inc. v. Orange County,* 701 S.W.2d 344, 350 (Tex.App.—Beaumont 1985, no writ), an award of attorney's fees based solely on a jury finding of harassment was upheld. In the case at bar, the jury did specifically find that Shenandoah's suits against all appellees were brought in bad faith and for the purpose of harassment. Under *Leissner v. Schott,* 668 S.W.2d at 686, a jury finding of harassment alone is enough to entitle a defendant to an award of attorney's fees under section 17.-50(c).

Furthermore, as to Shenandoah's argument that attorney's fees were improperly awarded, findings of fact and conclusions of law concerning the award of attorney's fees were neither requested nor entered. Shenandoah argues that it was not required to request findings of fact and conclusions of law since the trial was by jury. Ordinarily this is correct. However,

the parties and attorneys all agreed to an order that "the fact issues of reasonable and necessary attorney's fees and expenses incurred in prosecuting or defending these actions and counterclaims, including representation at various appellate court levels, *shall be tried to the court in a separate trial,* such trial to be set by the court." (Emphasis added.) Such a trial was held by the court on the issue of attorney's fees; therefore, since Shenandoah failed to request any findings of fact or conclusions of law on the separate attorney's fees trial to the judge, the trial court judgment implies all necessary fact-findings in support of its judgment. *Rosestone Properties, Inc. v. Schliemann,* 662 S.W.2d 49, 51 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.). The trial court did award attorney's fees in its judgment. All findings of fact and conclusions of law necessary to uphold the attorney's fees award are therefore deemed in favor of the judgment. Shenandoah's second point of error is overruled.

In its third point of error, Shenandoah contends that the trial court erred in admitting lengthy evidence regarding filing of a certificate of partnership, in permitting lengthy and prejudicial argument about its legality as the nominee, and in charging expenses of investigation of the question to Shenandoah in the judgment. Shenandoah states that because all parties pleaded that it was a partnership, it had no burden to prove that fact, *Lafield v. Maryland Casualty Co.,* 119 Tex. 466, 471, 33 S.W.2d 187, 188 (1930), and its existence as a partnership was therefore not at issue. Thus, it contends that the trial court erred in allowing lengthy testimony to establish that a certificate of limited partnership had not been recorded in California or in Texas; in permitting Bushman to testify that it would have made a difference if he had known no certificate had been filed; in allowing the Bushman group some $3,200 in expenses for an investigation to determine that no certificate had been filed in California and for a witness, Jay Soni, to

attend the trial and so testify; and in permitting the Bushman group's attorney to argue about the nonregistration of the certificate, all to the great prejudice of Shenandoah.

In reply, the Bushman group notes that in their counterclaim they refer to Shenandoah as a "California partnership" with Opdahl and Babbidge as "general partners." They maintain that whether Shenandoah had filed its certificate of limited partnership was vigorously contested; that in their third amended answer, both in their plea in abatement and in their special denials, they denied the existence of Shenandoah as a valid limited partnership and its legal capacity to sue. By such pleadings, they argue that the burden was placed on Shenandoah to prove its proper formation and legal existence under California law.

In attempting to meet its burden, Shenandoah offered the testimony of one of its general partners, Gary Opdahl, and introduced into evidence its certificate of limited partnership. In order to address Shenandoah's third point, the chronology of the testimony and evidence with regard to this issue must be summarized:

> July 31, 1984 Testifying on direct examination, Opdahl proves up limited partnership certificate and testifies same was filed in Los Angeles County, California, resulting in admission of plaintiff's certificate of limited partnership into evidence as plaintiff's exhibit 19.

> August 3, 1984 On cross-examination, Opdahl testifies that between December 17, 1982, and January 3, 1983, he did nothing, "other than forming the partnership," to syndicate the property.

> August 6, 1984 On cross-examination, Opdahl admits he does not know by "personal knowledge" where certificate was filed, if anywhere, or if filing fee was paid, but can only say his

office staff would have taken care of the filing under his supervision.

> August 6, 1984 On redirect examination, Opdahl testifies it was his duty as general partner to supervise and be responsible for filing of limited partnership certificates with proper authorities and that he received in normal course of his duties a report on whether or not certificate was filed. Immediately thereafter, plaintiff rested.

> August 9, 1984 Defendants' witness J. Soni testified on direct examination that no certificate of limited partnership had been filed in Los Angeles County, California, the county where the statute required such filing.

> August 15, 1984 On redirect examination, Opdahl testified he and Babbidge had entered into the Shenandoah partnership "by December 1, 1982," as evidenced by plaintiff's exhibit 19, and subsequently entered into a formal agreement of limited partnership (plaintiff's ex. 263, signed 3/12/83, more than two months after the closing) "in support of" plaintiff's certificate of limited partnership. Opdahl was further permitted to testify over objection that on January 4, 1983, on October 20, 1983, and at the time of trial, he "believed" the plaintiff's certificate had been filed in the Los Angeles County records, but he only found out otherwise during the course of the trial.

 From this summary, we conclude that Opdahl's conflicting testimony placed his credibility in issue and raised fact questions, thereby entitling the Bushman group to disprove Shenandoah's allegations and Opdahl's testimony when they presented their case-in-chief. Further, Shenandoah waived any objection to Soni's testimony by proceeding on cross-examination to elicit from him that Shenandoah was required to file its certificate in Los Angeles County and that no certificate was filed during

1982 or 1983, the relevant time periods. *Missouri–Kansas–Texas Railroads Co. v. Shelton*, 383 S.W.2d 842, 848 (Tex.Civ. App.–Dallas 1964, writ ref'd n.r.e.), *cert. denied*, 382 U.S. 845, 86 S.Ct. 54, 15 L.Ed. 2d 85 (1965). We hold that the trial court did not err in admitting testimony about the non-recording of the certificate of limited partnership.

 Shenandoah also complains under this point that the trial court erred in allowing the Bushman group's attorney "to argue at great length and prejudicially over the non-registration of a certificate, in his closing arguments." We have read the portion of the argument about which Shenandoah complains and find that Shenandoah failed to object in the trial court to any statement made by the Bushman group's attorney at that time. Before improper argument can constitute reversible error, a complainant must prove seven factors, the third of which is that error, if any, was preserved by proper trial predicate, such as an objection, a motion to instruct, or a motion for mistrial. *Standard Fire Insurance Co. v. Reese*, 584 S.W.2d 835, 839 (Tex.1979). Shenandoah has waived any error that it may have had based on its contention that the trial court allowed improper argument.

Finally, Shenandoah complains of the trial court's allowance of expenses to the Bushman group for investigating whether any certificate had been filed in California and for witness expenses to attend trial. This portion of point three will be discussed under point four; otherwise, Shenandoah's third point is overruled.

Shenandoah complains in its fourth point that the trial court erred in awarding the Bushman group expenses not taxable or allowable by law. The trial court judgment made the following awards for expenses:

| Defendant | | Expenses |
|---|---|---|
| 1. A–1 | | |
| | (trial court) | $10,852.81 |
| | (court of appeals) | 5,000.00 |
| | (supreme court) | 2,500.00 |
| 2. Bushman | | |
| | (trial court) | $10,852.81 |
| | (court of appeals) | 5,000.00 |
| | (supreme court) | 2,500.00 |
| 3. Home | | |
| | (trial court) | $48,825.14 |
| | (court of appeals) | 5,000.00 |
| | (supreme court) | 2,500.00 |
| 4. Family | | |
| | (trial court) | $52,325.14 |
| | (court of appeals) | 5,000.00 |
| | (supreme court) | 2,500.00 |

Additionally, the court awarded A–1, Bushman, Home, and Family their "taxable costs of court."

 We first address the awards for expenses in the appellate courts. We have found no authority supporting an award of expenses based on an estimate of charges that may be incurred in the appeal of a case, and the Bushman group have cited none. Further, there is no evidence in the record to show the nature of the anticipated expenses on appeal. Thus, we sustain Shenandoah's fourth point as to the amounts awarded to A–1, Bushman, Home, and Family for expenses in the court of appeals and in the supreme court.

 We now consider the awards for expenses incurred in the trial court. Shenandoah claims that many of the items included under trial court expenses are not recoverable because they consist of expenses in preparation for trial. It is the general rule in Texas that expenses incurred in prosecuting or defending a suit are not recoverable as costs or damages unless recovery of those items is expressly provided for by statute, is available under equitable principles, *Phillips v. Wertz*, 579 S.W.2d 279, 280 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r.e.), or is expressly provided for by contract. *Berts v. Businespeople Personnel Services, Inc.*, 620 S.W. 2d 861, 863 (Tex.Civ.App.—Dallas 1981, no writ). This rule applies to a litigant's loss of time and that of his employees. *Id.* The rule has also been held to apply to a premium for a replevy bond and to traveling expenses incident to prosecuting or defending a suit, *Brandtjen & Kluge v. Manney*, 238 S.W.2d 609, 612 (Tex.Civ.App.— Fort Worth 1951, writ ref'd n.r.e.); to a premium for a supersedeas bond, *Hammonds v. Hammonds*, 158 Tex. 516, 518–

19, 313 S.W.2d 603, 605 (1958); to attorney's fees, costs of experts, and "other expenses in preparation for trial," *City of Houston v. Biggers*, 380 S.W.2d 700, 705 (Tex.Civ.App.—Houston 1964, writ ref'd n.r.e.); to a fee for an auditor who was not appointed by the court under rule 172 of the Texas Rules of Civil Procedure, *Taormina v. Culicchia*, 355 S.W.2d 569, 575 (Tex.Civ.App.—El Paso 1962, writ ref'd n.r. e.); to certified copies of deeds, *Whitley v. King*, 581 S.W.2d 541, 544 (Tex.Civ.App.—Fort Worth 1979, no writ); and to loss of earnings due to time lost because of pendency of suit, such as time required for depositions and attendance at trial, *Phillips v. Latham*, 523 S.W.2d 19, 27 (Tex.Civ.App.—Dallas 1975, writ ref'd n.r.e.), *appeal after remand*, 551 S.W.2d 103 (Tex. Civ.App.—Waco 1977, writ ref'd n.r.e.). On the other hand, the expense of taking depositions is an item of court costs and properly chargeable as such. *Wallace v. Briggs*, 162 Tex. 485, 491, 348 S.W.2d 523, 527 (1961).

In the foregoing cases, the court examined each item sought to be charged as court costs or to be recovered as damages and ruled on the items individually. Consequently, we must examine the separate items that make up the total amounts awarded each member of the Bushman group by the trial court as "expenses" to determine if they are recoverable under the general rule stated above.

The trial judge granted its award of expenses in the trial court to A–1 and Bushman, individually, as part of their recovery under the DTPA on grounds that Shenandoah's suit against them was groundless and brought in bad faith, or brought for the purposes of harassment. TEX.BUS. & COM.CODE ANN § 17.50(c). The prevailing party under this section is entitled to recover "reasonable and necessary attorneys' fees and court costs." *Id.* Because the items making up the $10,852.81 awarded to A–1 and Bushman are identical, we consider their awards simultaneously.

■ We have examined the itemizations of charges totalling $10,852.81. We hold that the following categories of charges are expenses of litigation that are *not* recoverable from Shenandoah under the Texas general rule and authorities cited above: delivery services, such as Federal Express; travel; long distance calls; bond premiums; postage; reproduction expense; binding of brief; transcripts of testimony elicited during trial; office air-conditioning (75 percent of weekend); and secretarial overtime.

■ We further hold that the following categories of charges contained in the itemization of the $10,852.81 are recoverable as court costs: filing fee, court reporter fee, transcript fees, subpoena/citation fees, and deposition costs. These items total $2,808.66 of the $10,852.81, and they are all recoverable as court costs. Because A–1 and Bushman are entitled to recover $2,808.66 under that portion of the judgment awarding them their taxable costs of court and because we have found no items that are otherwise recoverable, we set aside the awards of expenses in the trial court of $10,852.81 to A–1 and Bushman.

The trial court awarded Home $48,825.14 as expenses in the trial court. It is apparent from the record that the judge arrived at this figure by awarding Home the same $10,852.81 that he awarded A–1 and Bushman, plus "Additional Fees, Expenses" incurred by Home alone. These additional sums, in part, consisted of expenses incurred by employees of Home for time spent on the case and for their travel, hotel and meals while in attendance at depositions or at the trial. Other charges were for consultant fees; for travel expense for nonemployee witnesses; for legal fees to the California firm of Angel & Niestat in relation to the investigation of whether Shenandoah had filed its certificate of limited partnership in Los Angeles County; for the charges of Legal Support Services, Los Angeles, California, for actually searching the records to determine if the limited partnership certificate had been filed and for the expense of Jay Soni of that firm to travel to Texas and testify in the case; for copies of the papers in J & K's bankruptcy case; and for deposition costs.

■ The court awarded Home its expenses based on the provisions in the $830,-

000 note and in the accompanying deed of trust that Shenandoah assumed under the assumption agreement at closing. Those instruments provide that the holder of the note may recover all reasonable costs and expenses of suit. Home specifically argues that the expenses charged by Legal Support Services and the California attorneys are expenses of collection under the specific provisions of its note. We disagree. These charges were not incurred in aid of Home's counterclaim for debt and foreclosure on its note. Instead, they were incurred in defending against Shenandoah's claims. The evidence resulting from the California investigation was used to attack Opdahl's credibility and Shenandoah's capacity as a limited partnership to prosecute its suit against the Bushman group, of which Home was a member.

We have found no authority for the proposition that the provision in a note for recovery of all reasonable "costs and expenses of suit" means anything other than the usual court costs and expenses ordinarily allowed under the general Texas rule in other types of litigation. Home has cited none. None of the items of additional expense and fees sought by Home are provided for by statute. None are expressly provided for under the terms of the note. However, the deposition costs are recoverable as court costs. *Wallace v. Briggs,* 162 Tex. at 485, 348 S.W.2d at 523. Accordingly, we hold that Home may likewise recover, as taxable costs, $2,808.66 of the $10,852.81 awarded as expenses, plus $4,656.39 for deposition costs that were added to its "Additional Fees, Expenses" on Home Exhibit 276 through testimony, for a total of $7,465.05. Further, we hold that no other items comprising Home's trial court expenses are recoverable; consequently, we set aside the $48,825.14 award to Home as expenses in the trial court.

Finally, Family Development was granted $52,325.14 as trial court expenses, which included the same $10,852.81 awarded A–1, plus the same additional expenses and fees awarded Home to bring the total to $48,825.14, and, in addition, Family was awarded $3,500 for "expenses of collec-

tion" as authorized by the terms of the $135,000 second lien note. We have already held that of the $48,825.14 award, only $7,465.05 is recoverable. Thus, we only address the appropriateness of the extra $3,500 award to Family Development. That figure appears on page 2 of Home Exhibit 276 as "Estimated Costs/Expenses." There is no evidence to show the nature of any of the costs or expenses making up the $3,500. To the extent any such charges are taxable as costs, Family has been otherwise awarded those in the judgment. We hold under this record that the $3,500 in estimated costs/expenses are not recoverable under the trial court's judgment as "expenses of collection." Accordingly, we set aside the award of $52,325.14 to Family Development as expenses in the trial court, and we hold that it may recover $7,465.05 of the charges listed under "expenses" as taxable costs under the trial court's judgment. To the extent of the above adjustments, Shenandoah's fourth point of error is sustained.

In point number five, Shenandoah complains that the trial court committed reversible error by allowing parol evidence as to the meaning and intent of the rental agreement between Shenandoah and A–1, which was executed on January 4, 1983, during the closing of the sale of the property. This point is without merit.

Shenandoah is mistaken in its argument that there are no pleadings of mistake to justify the admission of parol evidence in relation to the rental agreement. To the contrary, A–1 pleaded mutual mistake of fact as an affirmative defense to its failure to sign a master lease prepared by Shenandoah under the terms of the rental agreement. That issue was tried and the jury found that there was a mutual mistake of fact between Shenandoah and A–1 concerning the amount of money A–1 was to pay under the rental agreement.

Parol evidence is admissible to show the true terms of a contract when mutual mistake or fraud is at issue; *Santos v. Mid–Continent Refrigerator Co.,* 471 S.W.2d 568, 569 (Tex.1971); *Alkas v. United Savings Association,* 672 S.W.2d 852, 858

(Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.). The trial court did not err in admitting the parol evidence of which Shenandoah complains. Shenandoah's fifth point of error is overruled.

In its sixth point of error Shenandoah complains that testimony by an expert witness far exceeded the limitation of a pretrial order, which limited the witness' testimony to the areas of reasonable attorney's fees and to the amount of damages. Shenandoah contends that this testimony was prejudicial because, contrary to the court's order, the witness testified freely as to reliance of the parties, proper documents for a closing, lack of certain documents at the closing, the generally accepted interpretation of documents and their meanings, whether or not the attorney for Shenandoah acted with propriety, and the witness' interpretation of the Canons of Ethics.

Shenandoah initially complains that Barker, the expert witness, was an unlisted witness and, therefore, should not have been allowed to testify at all. *Yeldell v. Holiday Hills Retirement & Nursing Center, Inc.*, 701 S.W.2d 243, 246 (Tex.1985). The court there held that, because defendant did not show good cause for its failure to amend its answer to interrogatories to add the witness, the trial court did not abuse its discretion in refusing to allow defendant's unlisted witness to testify. *Id.* Here, after trial began, J & K filed a request for leave to introduce the testimony of Barker, during the presentation of its case-in-chief. The trial court signed an order granting the request in part and denying it in part. The court *deleted* one paragraph of the order that stated:

> FURTHER APPEARING to the court that said request was not timely made and that the granting of same in its entirety would work a hardship and an injury to [Shenandoah]; ....

■ We conclude that when the trial court deleted this portion of the order and granted the request in part, it impliedly found that J & K had shown good cause for presenting the testimony of a previously undisclosed expert witness. Shenandoah has not attacked the trial court's ruling as

an abuse of discretion. We overrule Shenandoah's contention that the unlisted witness should not have been allowed to testify at all.

We now address Shenandoah's primary complaint in its sixth point, which is that the trial court erred in allowing Barker, J & K's expert witness, to testify beyond the limits set in the court's pretrial order. That order provides that J & K could present Barker's testimony in its case-in-chief only in the following respects:

1. Testimony relating to his personal history, professional experience, and qualifications as an expert witness;

2. Testimony which relates to the damages which plaintiff has alleged it has incurred due to the actions or inactions of J & K Properties, Inc.; and

3. Testimony which relates to the reasonableness and amount of attorney's fees involved in the above referenced litigation if he is qualified to so do;

. . . .

■ We have reviewed Barker's testimony in its entirety. We hold that the testimony elicited by J & K on direct examination of Barker was within the limitations set forth in the pretrial order.

To the extent that Shenandoah is complaining that testimony elicited from Barker by the Bushman group was outside the scope of the pretrial order, we note first that the order is not directed to any member of the Bushman group. Second, the trial court held on August 6 that Shenandoah had not propounded any discovery question or any other pretrial question which would have required disclosure of Barker so as to preclude the Bushman group from calling him as an expert witness. The trial court then ruled that any objection based on the July 31 pretrial order would be overruled as to any testimony elicited from Barker by the Bushman group. Shenandoah has not complained of this ruling; thus, the error, if any, regarding the ruling is waived. TEX.R.APP.P. 52(a).

Shenandoah has not attacked Barker's testimony on any other specific ground.

However, it makes a general statement that Barker attempted to infringe upon the prerogative of the court to pass on questions of law and that his testimony was highly prejudicial. Shenandoah has referred us to various portions of Barker's testimony that was admitted "over objection" but has neither attacked any specific ruling of the court nor cited any authority to show that any particular ruling was error. Moreover, Shenandoah did not object to much of his testimony.

Having reviewed all of Barker's testimony, we conclude that the vast majority of it was proper to disprove Shenandoah's damage claims, the propriety of its claim for attorney's fees, and its reliance on alleged fraud and misrepresentation. Further, the trial court also ruled that Barker's testimony was admissible on the issue of whether a given act is a deceptive trade practice. Shenandoah did not object to this ruling; therefore it waived error, if any, in regard to this ground for admitting the evidence of which it complains. *Id.*

The standard of review of evidentiary points is whether the trial court abused its discretion. *UMC Inc. v. Coonrod Electric Co.*, 667 S.W.2d 549, 559 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.). Shenandoah does not address this standard. The record reflects that the court ruled on a question-by-question basis as to whether Barker's testimony was admissible and limited his testimony to the purposes that are outlined in the preceding paragraph. The record does not reflect that the trial court abused his discretion.

Finally, reversible error is not ordinarily shown in evidentiary rulings unless the whole case turns on the particular evidence admitted or excluded. *Bridges v. City of Richardson*, 349 S.W.2d 644, 649 (Tex.Civ.App.—Dallas 1961), *writ ref'd n.r.e. per curriam*, 163 Tex. 292, 354 S.W.2d 366 (1962). In view of the length of the trial and the volume of testimony from other witnesses before the jury on all contested issues, we hold that Shenandoah's whole case did not turn on Barker's testimony. Consequently, we further hold that if the trial court erred in admitting some portions of this testimony, the error does not call for reversal. *Id.* The sixth point is overruled.

In Shenandoah's seventh point of error, it complains that the jury's finding that no conspiracy existed among the five defendants (the four members of the Bushman group and J & K) was contrary to the overwhelming weight and preponderance of the evidence. We disagree.

The Texas Supreme Court, in *Massey v. Armco Steel Co.*, 652 S.W.2d 932 (Tex. 1983), recognized an actionable civil conspiracy to consist of:

> a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. *Great National Life Insurance Co. v. Chapa*, 377 S.W.2d 632, 635 (Tex. 1964); *State v. Standard Oil Company*, 130 Tex. 313, 107 S.W.2d 550, 559 (1937). The essential elements are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result.

*Id.* at 934.

Shenandoah readily agrees that the object to be accomplished, the sale of the park, was not unlawful, yet contends that the sale was accomplished by unlawful means through the false representations and false warranties, knowingly made, by members of the Bushman group to induce Shenandoah to close. Shenandoah relies principally on the admittedly false warranty by Home in the assumption agreement that the seller "has as of the date hereof, timely performed all of its obligations under the promissory note, the deed of trust, and ... the lender hereby warrants that the seller is not presently in default under any of its obligations to lender." However, the jury found that Home alone made the representations regarding J & K's performance of its obligations under the $830,000 note to which the assumption agreement refers, and the record contains evidence that Shenandoah knew J & K was in default prior to signing the assumption agreement. The jury found that Home's repre-

sentation in this regard was not a producing cause of damages, that it was not inducing, and that it was not material. Thus, Shenandoah wholly failed to prove that the defendants participated in an unlawful act on which to base liability for civil conspiracy. Shenandoah's seventh point of error is overruled.

Shenandoah contends in its eighth and ninth points of error that there is no evidence that Shenandoah brought this action in bad faith and for purposes of harassment or, alternatively, that the jury's findings that the action was brought in bad faith and for purposes of harassment are against the great weight and preponderance of the evidence. Shenandoah relies on Home's admission that it falsely warranted in the assumption agreement that J & K was not delinquent and had performed all of its obligations under the note assumed by Shenandoah. Shenandoah argues that the admitted falsity of the representations was overwhelming evidence of good faith and lack of harassment on its part in pursuing its legal rights under the DTPA. We disagree.

As we pointed out in the seventh point, there is evidence in the record that Shenandoah knew the warranty in the assumption agreement was false when the agreement was signed. There is also other conflicting evidence regarding this paragraph of the agreement in the record. The jury resolves conflicting testimony. *Fichtner v. Richardson*, 708 S.W.2d 479, 483 (Tex.App.—Dallas 1986, writ ref'd n.r.e.) Shenandoah's eighth and ninth points are overruled.

In points ten and eleven, Shenandoah complains that there is no evidence that it waived its right to complain of the closing documents and condition of the park, or, alternatively, that the jury's findings in that regard are contrary to the great weight and preponderance of the evidence. Although Shenandoah, under its points of error as to waiver, seems to argue as well against the findings by the jury as to ratification, we conclude that no point of error was levelled against the jury's finding as to ratification; thus this question is not before this court. We address only Shenandoah's waiver point.

In determining a no evidence point, only evidence tending to support the trial court's judgment and reasonable inferences therefrom are to be considered. If there is some evidence of probative force to support the jury's finding, the no evidence attack fails. *DeBenavides v. Warren*, 674 S.W.2d 353, 356 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.).

In reviewing the factual sufficiency, we must weigh all the evidence to determine if the findings are so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 150 Tex. 662, 664–65, 244 S.W.2d 660, 661 (1951). Where evidence is conflicting, we are bound by the findings of the fact finder. *Holly v. Cannady*, 669 S.W.2d 381 (Tex.App.—Dallas 1984, no writ).

Shenandoah contends there is no evidence, or insufficient evidence, of its intention to waive its rights to complain of the condition of the park or of the closing documents. Waiver may be established by proof that the party possessing a known right expressly relinquishes it or acts in a manner inconsistent with, or fails to act in a manner consistent with, an intent to claim the right. *Alford, Meroney & Co. v. Rowe*, 619 S.W.2d 210, 213–14 (Tex.Civ. App.—Amarillo 1981, writ ref'd n.r.e.). The record reflects that Shenandoah discovered the majority, if not all, of the defects in the park of which it complains no later than January of 1983. Nevertheless, Shenandoah continued to operate the park and accept rents through trial and continued to make payments on the $830,000 note until September of 1983. We hold that this evidence is sufficient to support the jury finding that Shenandoah waived its right to complain of the condition of the park. *Id.*

Regarding Shenandoah's complaint of the closing documents, the record reveals evidence that its attorney prepared and/or reviewed the closing documents and that, before closing, it knew of the falsity of Home's warranty that the assumed note was current and that Family had an inter-

est in and potential lien on the property. This evidence is sufficient to support the jury finding that Shenandoah waived its right to complain of the closing documents by closing the sale, executing closing documents, and accepting the deed from J & K. Shenandoah's tenth and eleventh points are overruled.

In its twelfth and final point of error, Shenandoah contends that the jury's findings to subdivisions 14 and 15 of special issue number three and subdivisions 15 and 16 to special issue number nine, all of which deal with whether or not J & K performed all of its obligations under the first lien note and was not in default, substantially ignore the testimony and the judicial admissions that the note was in fact in default at the time of closing. We disagree. The jury found in answer to subpart (a) of each of these four subdivisions that Home warranted or represented that J & K had timely performed all of its obligations under the $830,000 note and was not in default at closing. Thus, the jury did not ignore the testimony or judicial admissions to that effect. Shenandoah does not challenge the additional findings under the other subparts to these subdivisions, which provide that the warranties were not a producing cause of damages (issue 3, subparts 14(c) and 15(c)) and that the representations were either not inducing (issue 9, subpart 15(d)) or not material (issue 9, subpart 16(c)).

Further, Shenandoah has failed to cite us to portions of the record to sustain its argument that all of the evidence points to the fact that these representations and warranties were relied upon in Shenandoah's purchase of the park. Shenandoah's failure to cite the record constitutes waiver of this argument under this point of error. *Golden Villa Nursing Home, Inc. v. Smith*, 674 S.W.2d 343, 351 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). This court declines to make an independent search of thirty-eight hundred pages of testimony in an attempt to support Shenandoah's claims. *Saldana v. Garcia*, 155 Tex. 242, 248, 285 S.W.2d 197, 200–01 (1955); *Kropp v. Prather*, 526 S.W.2d 283,

288 (Tex.Civ.App.—Tyler 1975, writ ref'd n.r.e.). Shenandoah's point of error number twelve is overruled.

## J & K's CLAIMS

J & K first contends that the trial court erred by admitting into evidence depositions that were taken without notice to J & K. Texas Rule of Civil Procedure 200(2) states the notice requirements for an oral deposition:

2. *Notice of Examination: General Requirements; Notice of Deposition of Organization.*

a. Reasonable notice must be served in writing by the party, or his attorney, proposing to take a deposition upon oral examination, *to every other party or his attorney of record....*

TEX.R.CIV.P. 200(2) (emphasis added). When other parties are not given notice of the deposition, an "ex parte" deposition is not admissible. *See Reilly v. Buster*, 125 Tex. 323, 328, 82 S.W.2d 931, 933 (1935); *Woodall v. Adams*, 7 S.W.2d 922, 925 (Tex. Civ.App.—Galveston 1928, no writ); *see also Pouncy v. Garner*, 626 S.W.2d 337, 344 (Tex.App.—Tyler 1981, writ ref'd n.r. e.).

In the present case, the trial court entered an interlocutory default judgment against J & K and Home on November 23, 1983, which: (1) rescinded the sales contract; (2) set aside the general warranty deed and bill of sale; (3) cancelled the $135,000 promissory note and second lien deed of trust; (4) cancelled the assumption agreement; and (5) ordered Shenandoah to reconvey the property to the defendants "upon receipt of the restitution and incidental damages hereafter ordered to be paid Plaintiff, by this Court." The court stated that a hearing would be held to determine the amount of damages to be paid to Shenandoah. The court later set aside the default judgment against Home and granted it a new trial. J & K did not attempt to set aside the default judgment against it until July 9, 1984, after the depositions at issue were taken.

■ Clearly, the default judgment granted against J & K only determined J & K's liability to Shenandoah; the issue of damages was not answered. Therefore, J & K should have been given notice of the taking of the depositions since it was still a party to the suit.

J & K objects to the admission of the deposition testimony of Luther Forman, Steve Brindle, Stanley Black, Stephen Babbidge, Michael Jackson, and Geno Olivas. (The other depositions cited by J & K in its brief were never read into evidence and, therefore, are not crucial.) At trial, the depositions of Jackson and Olivas were read into the record without J & K asserting its notice objection. After more than half of Brindle's deposition had been read into the record, J & K presented its objection for lack of notice. The trial court ruled that the objection was untimely as it applied to the depositions that had already been read into the record, but stated:

> The objection insofar as it relates to use of depositions to prove liability and not damages is overruled inasmuch as at the time the depositions were taken, liability had been determined by default judgment against J & K Properties, Incorporated, and when the Court vacated interlocutory default judgment the day before trial commenced J & K Properties, Incorporated, withdrew its motion for continuance, which would have been the proper remedy to allow the retaking of the depositions.

> As to the objection insofar as it relates to use of depositions or portions thereof not yet read before the jury and insofar as they relate to the issue of damages against J & K Properties, Incorporated, the Court takes that under advisement and carries it and will make a decision later on that issue.

> You've preserved your objection on the record as to all portions not yet read, any portion read will be read over your objection, over your motion to strike. If the Court determines that you are correct, it will take such action as necessary later in the trial or after the verdict to prevent any harm with respect to damages.

The court made no further ruling on the admissibility of the depositions as they relate to the issue of damages.

J & K reurged its objection to the remainder of Brindle's deposition and to the subsequent offers of the depositions of Black, Forman, and Babbidge. Initially, J & K has not specifically attacked the trial court's ruling that it waived its objection based on lack of notice as to the depositions of Michael Jackson, Gene Olivas, and as to that portion of Steve Brindle's deposition that was read before J & K urged its objection. Consequently, J & K has waived error, if any, in regard to that ruling, and we treat the deposition testimony elicited prior to J & K's notice objection as properly admitted.

J & K argues that its due process rights were violated by the admission of depositions taken without notice to J & K, and it contends that the deposition testimony admitted provided the jury with the only credible evidence it had to support its findings against J & K relating to the conditions of the park. It, therefore, contends that the trial court reversibly erred in admitting such testimony.

■ Although we agree that the trial court erred in admitting any deposition testimony adverse to J & K after it made its objection thereto for lack of notice, our inquiry does not end there. Reversible error is not ordinarily shown in evidentiary rulings unless the whole case turns on the particular evidence admitted or excluded. *Bridges v. City of Richardson,* 349 S.W.2d at 649. In addition, before we can reverse the trial court's judgment, we must conclude that the admission of the deposition testimony complained of was such a denial of J & K's rights as would reasonably be calculated to cause and probably did cause the rendition of an improper judgment against it. *Id.;* TEX.R.APP.P. 81(b).

After J & K's notice objection, the trial court admitted other portions of Brindle's deposition and excerpts from the depositions of Black, Forman, and Babbidge. Both before and after objection, Brindle testified to defects in the septic system at the park. His testimony after objection

was cumulative of his prior testimony on that subject; after objection, he also testified to some minor problems with the water system. Black testified in more detail to defects in the water lines and to electrical problems in rows one and three at the park.

On the other hand, after Brindle and Black's testimony was admitted, Shenandoah called Lindal Murray as a live witness. Murray testified, without objection by J & K, to the same or similar defects in the septic system and water lines to which Brindle testified and to the same or similar defects in the water lines and the same electrical problems in rows one and three at the park to which Black testified.

According to the general rule, error in the admission of testimony is deemed harmless if the objecting party subsequently permits the same or similar evidence to be introduced without objection. *Richardson v. Green*, 677 S.W.2d 497, 501 (Tex. 1984). Thus, we hold that the trial court's admission, over J & K's objection, of Brindle's and Black's testimony was harmless. *Id.*

Luther Forman testified by deposition after Murray. His testimony concerned the electrical problems in rows one and three of the park and the cost to bring the park up to 100 amps and/or 200 amps per trailer pad. Forman's testimony was cumulative of that elicited from Murray. An erroneous ruling upon the admissibility of cumulative evidence is not ordinarily reversible, *Whitener v. Traders and General Insurance Co.*, 155 Tex. 461, 467, 289 S.W. 2d 233, 236 (1956), and the admission of incompetent evidence does not constitute reversible error when there is other competent evidence in the record on the same question. *Mandril v. Kasishke*, 620 S.W. 2d 238, 249 (Tex.Civ.App.—Amarillo 1981, writ ref'd n.r.e.). Based on these authorities, we hold that the admission of Forman's testimony was harmless error.

Finally, Babbidge's deposition testimony made no mention of J & K or of the condition of the park. J & K was not harmed by its admission.

In summary, an examination of the record as a whole shows that the deposition testimony of which J & K complains was not the only credible testimony before the jury to support its findings against J & K. Consequently, we hold that the admission of this testimony does not amount to such a denial of J & K's rights that it reasonably caused and probably did cause the rendition of an improper judgment against J & K. TEX.R.APP.P. 81(b).

In its second point, J & K argues that the trial court erred, over objection, in deeming admitted J & K's answers to Shenandoah's request for admissions and in admitting into evidence said requests and deemed answers and J & K's answers to Shenandoah's interrogatories. J & K argues three theories to support its position that its answers to Shenandoah's request for admissions and interrogatories are inadmissible: (1) some questions were multiple, confusing, and abusive to J & K, by and through its president, Bill Jacobson, who had no counsel present at the time he answered the interrogatories and requests in the presence of Shenandoah's counsel; (2) Jacobson's answers were obtained upon misinformation and/or misrepresentations to him by Shenandoah's counsel; (3) Jacobson's answers to Shenandoah's request for admissions numbers 13, 15, 16, 17, and 18 should not have been deemed admitted based upon the automatic stay that was in effect at the time of the instigation of the case at bar.

We need not address the merits of J & K's argument under this point because, assuming that the trial court erred in deeming J & K's answers admitted to Shenandoah's requests numbers 13, 15, 16, 17, and 18 and assuming it erred in admitting into evidence those answers and its answers to Shenandoah's interrogatories, we hold that such error does not call for reversal. The only relief awarded against J & K in the trial court's judgment is that awarded Shenandoah in rescinding the sale of the property to it from J & K and the assessment of court costs against J & K, which we address in point six below. The question thus presented here is whether there

are any jury findings unrelated to the matters contained in J & K's answers to Shenandoah's request for admissions, and to its interrogatories, that are sufficient to otherwise support the rescission of the sale.

The trial court's judgment of rescission against J & K is based on the jury's answers to various subdivisions of special issues one, two, three, and nine. Although some of the jury's answers are clearly tainted by the admission of the deemed answers and answers to other requests that J & K admitted in Shenandoah's request for admissions, the jury also found adversely to J & K on other issues which were not addressed in either Shenandoah's request for admissions or in its interrogatories to J & K.

For example, the jury found that J & K warranted that the operating statements relating to the park were true and correct, that they were not in conformity with the warranty, that this nonconformity was a producing cause of actual damages to Shenandoah, and that this warranty was made knowingly. The jury made these same findings as to the alleged warranty that the improvements including the sanitation and sewage system were constructed in accordance with the plans provided Shenandoah by J & K. Neither Shenandoah's interrogatories nor its request for admissions addressed these matters. These findings are sufficient to support the trial court's judgment against J & K under the DTPA. *See* TEX.BUS. & COM.CODE ANN. § 17.50(a)(2).

█ When a judgment is based on two or more findings and at least one of the findings supports the judgment, there is no necessity to consider the other findings or questions pertaining to the admission or exclusion of evidence having no relation to the particular findings that support the judgment. *McMillion v. Wilkinson*, 135 S.W.2d 231, 235 (Tex.Civ.App.—Dallas 1939, writ dism'd judgmt cor.) Accordingly, we hold that the trial court's rulings with regard to J & K's answers to Shenandoah's request for admissions and its interrogatories were harmless error. J & K's second point is overruled.

J & K next contends that the trial court erred in instructing the jury to return for additional deliberation to determine an amount of damages to award Shenandoah after the jury initially found that no actual damages had been incurred by Shenandoah for breach of warranty and/or false representations. The special issues involved in this point of error are reproduced below:

SPECIAL ISSUE NO. 5

What sum of money, if any, if paid now in cash to Shenandoah, do you find from a preponderance of the evidence would put Shenandoah in the position it would have been in had it not purchased the Park?

Answer in dollars and cents, if any.

ANSWER; None

SPECIAL ISSUE NO. 6

What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence would fairly and reasonably compensate Shenandoah for the actual damages it has incurred, if any?

You are instructed that the term "actual damages" means the difference between the value of the Park as represented or promised to Shenandoah and its actual value in the condition in which it was delivered to Shenandoah at the time of the closing.

Answer in dollars or cents, if any.

ANSWER: 0

This answer was changed after further jury deliberation to $44,500.

SPECIAL ISSUE NO. 8

What amount of money, if any, do you find from a preponderance of the evidence should be awarded to Shenandoah for a representation or warranty or failure to disclose information, if any, found by you in Special Issue Nos. 1, 2, 3, or 4, to have been made knowingly? Answer separately as to each applicable Defendant, if any. You may in your discretion, award an amount not more than three times the amount of actual damages in excess of $1,000, if any, found by you in Special Issues 6 or 7, or award none.

Answer in dollars and cents, if any.

| J & K | $44,500 |
| A-1 | -0- |
| [Family] | -0- |
| [Home] | -0- |
| Bushman | -0- |

This issue was resubmitted to the jury with the last sentence corrected to read:

You may in your discretion, award an amount not more than three times the amount of actual damages in excess of $1,000, if any, found by you in Special Issues 5 or 6, or award none.

When the trial court judge first read the jury's answers to the attorneys, Shenandoah's attorney noted that the jury's answer in issue eight conflicted with the answers in issues six and seven (which the jury left blank). The court noted that issue eight should have been conditional upon the answers to issues five and six instead of issues 6 or 7. The court sent the following note to the jury:

Members of the jury, I have reviewed your verdict, in light of your answers to issues five, six and eight, you are instructed to reconcile your answer with respect to J & K. You are further instructed that the reference to "special issue six or seven" is amended to read "special issues five or six," in special issue number eight.

J & K made the following objection to sending the note to the jury:

I want to state an objection to having that question submitted to the jury because as a matter of law their findings on special issues five and six require as a matter of law the Court to disregard their finding on special issue number eight under the provisions of the statute and to resubmit that matter to the jury has a possibility to confuse or mislead the jury as to what it is that's in conflict.

■■■■ Texas Rules of Civil Procedure 195 governs defective verdicts. It states:

If the verdict is informal or defective, the court may direct it to be reformed at the bar. If it is not responsive to the issue submitted, or contains conflicting findings, the court shall call the jury's

attention thereto in writing and send them back for further deliberation.

TEX.R.CIV.P. 195. The court not only has the authority to instruct the jury to retire and attempt to reconcile conflicting answers, but it has a duty to call the jury's attention to conflicts. *City of Dallas v. Riddle*, 325 S.W.2d 955, 957 (Tex.Civ.App.—Eastland 1959, writ ref'd n.r.e.); *see Pon Lip Chew v. Gilliland*, 398 S.W.2d 98, 101 (Tex.1965); *Harris County v. Patrick*, 636 S.W.2d 211, 213-14 (Tex.App.—Texarkana 1982, no writ). The court correctly pointed out the conflict in the answers and required the jury to reconsider their conflicting answers. J & K's point of error three is overruled.

In its fourth point, J & K argues that the trial court erred in awarding Shenandoah the remedy of rescission because the jury found that the contract of December 31, 1982, was terminated and rescinded by agreement of the parties prior to the actual real estate closing on January 4, 1983. J & K presents no new argument to support its fourth point; instead, it refers us to its arguments under its points one, two, and three. In effect, J & K is arguing that the only actionable representations or warranties that J & K made were contained in the December 14, 1982, contract as reaffirmed in the amendment thereto on December 31, and that when the parties terminated those contracts at lunch on January 4, 1983, no representation or warranty by J & K to Shenandoah existed as of the closing later that day. We disagree.

■■■■ The jury found that Shenandoah waived and ratified the closing papers and the sale and condition of the park. These common law defenses defeated Shenandoah's recovery under all theories pleaded except its DTPA claims, which are not subject to common law defenses. *Smith v. Baldwin*, 611 S.W.2d 611, 616 (Tex.1980); *Joseph v. PPG Industries, Inc.*, 674 S.W.2d 862, 865 (Tex.App.—Austin 1984, writ ref'd n.r.e.) (op. on reh'g). Oral representations can also serve as the basis of a DTPA action. *Weitzel v. Barnes*, 691 S.W.2d 598, 600 (Tex.1985). There was sufficient evidence before the jury to support the jury

findings of J & K's violations under the DTPA. We have previously considered J & K's other arguments under points one, two, and three and have rejected them. J & K's fourth point of error is overruled.

In its fifth point, J & K asserts that the trial court erred in denying its motion for judgment n.o.v. because the jury could not have made the findings adverse to J & K in special issues 1, 2, 3, and 9 if the court had not erroneously admitted into evidence (a) Shenandoah's request for admissions with J & K's deemed admissions, (b) its answers to Shenandoah's interrogatories, and (c) certain depositions. We have already held that there was sufficient evidence to support the jury's findings from sources other than the deemed admissions, the answers to the interrogatories, and those portions of the depositions to which J & K timely objected. Accordingly, J & K's fifth point is overruled.

Next, J & K contends that the trial court erred in taxing a portion of the court costs against it because the jury could not have found adverse to J & K in its answers to special issues 1, 2, 3, and 9 if the trial court had not admitted into evidence its answers to Shenandoah's request for admissions and interrogatories and certain depositions. We have already ruled adversely to J & K on the argument asserted. J & K's sixth point is overruled.

Finally, J & K urges in its seventh point that the trial court erred in granting Shenandoah any relief because it was not an authorized limited partnership in California nor any other type of valid entity. In other words, J & K contends that Shenandoah lacked the capacity to sue. J & K cites no applicable authority to support its contention. Consequently, it has waived this point.

## HOME'S CROSS–POINTS

Home urges that its counterpoint 1.B. be considered as a separate cross-point if it is more proper to so consider it. Home contends under this counterpoint that the trial court erred in rescinding the sale of the park from J & K to Shenandoah. We perceive this contention as a defense of the trial court's judgment granting Home judgment, foreclosure of lien, and attorney's fees under the $830,000 note and deed of trust. Since we are affirming the trial court's judgment granting Home this relief, we need not address this "cross-point."

In its one formal cross-point, Home contends that the trial court's finding that Shenandoah's action against Home was not groundless is contrary to the great weight and preponderance of the evidence. Because of our disposition of this case in which we affirm the trial court's award to Home of attorney's fees and court costs under its counterclaim on its note, we hold this cross-point moot, because Home has already received all the relief to which it would be entitled under section 17.50(c) of the DTPA.

We reverse the trial court's judgment awarding the Bushman group expenses, and we render judgment that they take nothing for expenses in the trial and appellate courts. In all other respects, the trial court's judgment is affirmed.

STEPHENS, Justice, dissenting.

The original opinion handed down by this court March 31, 1987, reversed and remanded the cause to the trial court for a new trial. I adhere to the original disposition of the case, and disagree with the majority opinion issued on Motion for Rehearing, accordingly, I dissent.

This multiple-party suit was brought by Shenandoah Associates, the dissatisfied purchaser of a mobile home park in Odessa, Texas. Shenandoah seeks rescission and damages under the Texas Deceptive Trade Practices Act of the Business and Commerce Code as amended in 1979. After a jury trial of several weeks, and the submission of several hundred special issues, the trial court entered its judgment rescinding the sale of the park from J & K to Shenandoah, yet charging Shenandoah with liability for the unpaid balances of the first and second mortgages, and awarding attorney's fees against Shenandoah for having brought its suit in bad faith and for the purposes of harassment against all defendants except J & K.

On appeal, as recited by the majority, Shenandoah presents twelve points of error for our consideration. J & K Properties, Inc., a co-appellant, presents seven points of error, and Home Savings Association, Family Development Corporation, A-1 Inc., and John Bushman, appellees, present one cross-point. I agree with Shenandoah's points of error number one, and number six, and I agree with J & K's point of error number one, accordingly, I would reverse the judgment of the trial court and remand the case for a new trial.

## CHRONOLOGY OF FACTS

The majority opinion correctly recites the chronology of facts, and the judgment rendered by the trial court.

## SHENANDOAH'S CLAIMS

Shenandoah's first point of error complains that the trial court erred by granting partial rescission of the sale of the park instead of full rescission, and by not placing all the parties in the status quo, because partial rescission, not recognized under Texas law, leaves the Bushman group with all the benefits of the transaction.

Shenandoah argues that the rescission is not complete because it still requires Shenandoah to pay $830,000, as evidenced by the assumption agreement, together with the second lien promissory note for $135,-000. For purposes of deciding this point the majority assumes without deciding that the trial court properly granted Shenandoah rescission of its purchase of the park, yet would hold Shenandoah liable on its assumption of the first lien note. This conclusion expresses a rationale with which I cannot agree.

## RESCISSION

Rescission is an equitable remedy that may be granted upon certain grounds, such as fraud. *Boyter v. MCR Construction Co.*, 673 S.W.2d 938, 941 (Tex.App.—Dallas 1984, writ ref'd n.r.e.). The defrauded purchaser is put to an election whether he will keep the property and recover damages, or rescind the sale and return the property while recovering the value he has parted

with. *O'Con v. Hightower*, 268 S.W.2d 321, 322 (Tex.Civ.App.—San Antonio 1954, writ ref'd). This court in *Boyter* set out the prerequisites to the granting of rescission:

> To be entitled to the equitable remedy of rescission, however, a party must show either (1) that he and the other party are in the *status quo, i.e.,* that he is not retaining benefits received under the instrument without restoration to the other party, *Texas Co. v. State*, 154 Tex. 494, 281 S.W.2d 83, 91 (1955); *Freyer v. Michels*, 360 S.W.2d 559, 562 (Tex.Civ. App.—Dallas 1962, writ dism'd), or (2) that there are special equitable considerations that obviate the need for the parties to be in the *status quo, Turner v. Agricultural Credit Corp.*, 601 S.W.2d 61, 65 (Tex.Civ.App.—Houston [1st Dist.] 1980, no writ); *see also Texas Employers Insurance Association v. Kennedy*, 135 Tex. 486, 143 S.W.2d 583, 585 (1940).

*Boyter*, 673 S.W.2d at 941.

Shenandoah complains that the court's judgment requiring it to give up the property, but to continue to pay on the assumption agreement of the first lien note and to pay the second lien note constitutes a partial rescission. I agree with this argument.

A down-payment of $270,000 was required to purchase the Park. On January 4, 1983, at closing, Shenandoah paid $135,-000 in cash and signed a promissory note payable to J & K secured by a second lien deed of trust in which it promised to pay J & K $135,000. The second lien deed of trust specifically states that the note "represents a portion of the consideration ... for the purchase of the property" described in the deed. Simultaneously with closing, the second lien note was endorsed by J & K, stating that it did "sell, transfer, assign and set over the within note together with all liens securing same to Family Development" with recourse. When the trial court granted the rescission of the sale of the property to Shenandoah, it should have cancelled Shenandoah's indebtedness on the second lien note, to return the parties to the *status quo. See Boyter*, 673 S.W.2d at 941. This lien is an indivisible part of

the contract for the purchase of the Park; the rescission without cancellation of the note constitutes a prohibited "partial rescission." *Raney v. Mack*, 504 S.W.2d 527, 534 (Tex.Civ.App.—Texarkana 1973, no writ). Having elected to sue for rescission, Shenandoah should have recovered the value it parted with. *O'Con*, 268 S.W.2d at 322.

In addition to the cash payment and the execution of the second lien note, Shenandoah assumed the unpaid balance of the original first lien note in the amount of $830,000.00, as a part of the consideration of the sale. Generally, an assumption agreement in a deed of conveyance creates a new contract under which the one making the assumption becomes the principal obligor and the original maker becomes the surety. *Straus v. Brooks*, 136 Tex. 141, 146, 148 S.W.2d 393, 396 (Tex.Com.App. 1941). The agreement is an unconditional contract within itself; an unconditional promise to pay the debt. The promisor has made the debt his own, has become primarily liable for its discharge, and has assumed an independent duty of payment, irrespective of the liability of the principal debtor. *Id.*

However, when the assumption of an existing debt is a part of the consideration for the underlying contract of sale, the cancellation and rescission of the sale demands that equity be done by cancelling the debt assumption. For a purchaser to successfully rescind the purchase of real estate in a court of law, and yet be held to the assumption of the underlying debt is unconscionable. An exception would lie if it be shown that the mortgagee released the original obligor from the debt in reliance on the purchaser, or otherwise altered its position, as a consideration of the sale. This was not shown to be the case here, nor has the majority cited any authority in support of its position that rescission lies, yet the underlying original debt should be paid by Shenandoah. When the equitable relief of rescission is granted the original status of the parties must be restored. *See Texas Co. v. State*, 154 Tex. 494, 507–08, 281 S.W.2d 83, 91 (1955); *Boyter*, 673 S.W.2d 941; *Proctor v. Green*, 673

S.W.2d 390, 393 (Tex.App.—Houston [1st Dist.] 1984, no writ).

A recognized exception to this rule is when the purchaser terminates the contract and the court has examined the circumstances and determined that it would be more equitable to grant the rescission without the complete or partial restoration of the consideration received by the purchaser while in possession of the purchased item. *See Boyter*, 673 S.W.2d at 941; *Turner v. Houston Agricultural Credit Corp.*, 601 S.W.2d 61, 65 (Tex.Civ.App.— Houston [1st Dist.] 1980, writ ref'd n.r.e.). I believe that the trial court properly weighed the circumstances of this case and found it more equitable not to require Shenandoah to return to J & K the rental payments and other monies obtained while it was in control of the property.

The trial court granted Shenandoah's request for the equitable relief of rescission; therefore, it follows, and equity dictates, that Shenandoah should be returned to the *status quo* by requiring J & K to return the rescinded sales agreement purchase money in the sum of $135,000.00, by cancelling the second lien note of $135,000, and by cancelling Shenandoah's assumption agreement of the original loan. Shenandoah's first point of error should be granted.

In point of error number six, Shenandoah complains that testimony by an expert witness far exceeded the boundaries of a pretrial order, which limited the expert's testimony to reasonable attorney's fees and the amount of damages. Shenandoah asserts that the testimony was prejudicial because, contrary to the court's order, the witness testified freely concerning the reliance of the parties on certain documents, proper documents for a closing, the lack of certain documents at the closing, the generally accepted interpretation of documents and their meanings, whether the attorney for Shenandoah acted with propriety, and the witness also interpreted the Canons of Ethics. These were only a few of the areas of dispute on which the witness testified. I am mindful of the general proposition that the determination of the admissibility of

opinion testimony is a matter within the sound discretion of the trial court, which will not be disturbed on appeal absent a showing of abuse. *UMC, Inc. v. Coonrod Electric Co.*, 667 S.W.2d 549, 559 (Tex.App. —Corpus Christi 1983, writ ref'd n.r.e.). However, I am of the opinion that in light of the complexity of the case before us, admission of the testimony of this particular witness, far in excess of the limitations placed upon him by the trial court's pretrial order, was highly prejudicial and the trial court abused its discretion by admitting such testimony.

Appellee argues correctly that if the improper evidence given by the witness is supported by other evidence in the case, admitted without objection, or of the same character or effect, adduced or elicited by the complaining party, the error is harmless. *Drake v. Walls*, 348 S.W.2d 62, 69 (Tex.Civ.App.—Dallas 1961, writ ref'd n.r. e.); *see Missouri–Kansas–Texas Railroad Co. v. Shelton*, 383 S.W.2d 842, 848 (Tex. Civ.App.—Dallas 1964, writ ref'd n.r.e.), *cert. denied*, 382 U.S. 845, 86 S.Ct. 54, 15 L.Ed.2d 85 (1965); *City of Houston v. Howe & Wise*, 323 S.W.2d 134, 138 (Tex. Civ.App.—Houston 1959, writ ref'd n.r.e.); *see Richardson v. Green*, 677 S.W.2d 497, 501 (Tex.1984); *Columbia Engineering International, Ltd. v. Dorman*, 602 S.W.2d 72, 77 (Tex.Civ.App.—Beaumont 1980, writ ref'd n.r.e.). However, appellee has not pointed out to this court what other evidence, properly admitted, would justify a finding that the testimony of this witness was harmless, and I decline to search the thirty-eight hundred pages of testimony to attempt to find such other evidence. Appellant's sixth point of error should be sustained.

### J & K's CLAIMS

J & K first contends that the trial court erred by admitting into evidence, depositions that were taken without notice to J & K. Notice was only given to A–1.

Texas Rule of Civil Procedure 200(2) states the notice requirements for an oral deposition:

2. *Notice of Examination: General Requirements; Notice of Deposition of Organization.*

a. Reasonable notice must be served in writing by the party, or his attorney, proposing to take a deposition upon oral examination, *to every other party or his attorney of record....*

[Emphasis added.] When other parties are not given notice of the deposition, an "ex parte" deposition is not admissible. *See Reilly v. Buster*, 125 Tex. 323, 328, 82 S.W.2d 931, 933 (1935); *Woodall v. Adams*, 7 S.W.2d 922, 925 (Tex.Civ.App.—Galveston 1928, no writ); *see also Pouncy v. Garner*, 626 S.W.2d 337, 344 (Tex.App.— Tyler 1981, writ ref'd n.r.e.).

In the present case, the trial court entered an interlocutory default judgment against J & K and the other defendants, on November 23, 1983, which: (1) rescinded the sales contract; (2) set aside the general warranty deed and bill of sale; (3) cancelled the $135,000 promissory note and second lien deed of trust; (4) cancelled the assumption agreement; and (5) ordered Shenandoah to reconvey the property to the defendants "upon receipt of the restitution and incidental damages hereafter ordered to be paid Plaintiff, by this Court." The court stated that a hearing would be held to determine the amount of damages to be paid to Shenandoah. Clearly, this interlocutory default judgment only determined J & K's liability to Shenandoah; the issue of damages was not answered. Therefore, J & K should have been given notice of the taking of depositions since it is a party to the suit in which damages were yet to be determined.

J & K objects to the admission of the deposition testimony of Steve Brindle, Stanley Black, Stephen Babbidge, Michael Jackson, and Geno Olivas. (The other depositions cited by J & K in its brief were never read into evidence and, therefore, are not crucial.) At trial, the depositions of Jackson and Olivas were read into the record without J & K asserting its notice objection. After half of Brindle's deposition had been read into the record, J & K presented its objection for lack of notice. The trial

court ruled that the objection was untimely as it applied to the depositions that had already been read into the record, but stated:

> The objection insofar as it relates to use of depositions to prove liability and not damages is overruled inasmuch as at the time the depositions were taken, liability had been determined by default judgment against J & K Properties, Incorporated, and when the Court vacated interlocutory default judgment the day before trial commenced J & K Properties, Incorporated, withdrew its motion for continuance, which would have been the proper remedy to allow the retaking of the depositions.

> As to the objection insofar as it relates to use of depositions or portions thereof not yet read before the jury and insofar as they relate to the issue of damages against J & K Properties, Incorporated, the Court takes that under advisement and carries it and will make a decision later on that issue.

> You've preserved your objection on the record as to all portions not yet read, any portion read will be read over your objection, over your motion to strike. If the Court determines that you are correct, it will take such action as necessary later in the trial or after the verdict to prevent any harm with respect to damages.

The court made no further ruling on the admissibility of the depositions as they relate to the issue of damages.

J & K re-urged its objection to the remainder of Brindle's deposition and to the depositions of Black and Babbidge. Upon reviewing the depositions that were admitted into evidence without objection and those that were admitted over objection, I find damaging evidence that was admitted before the jury that is not "offset" by properly admitted deposition testimony. *See Richardson,* 677 S.W.2d at 501. (e.g. Brindle had testified about defectively built septic tanks before the objection, and continued to testify concerning various other defective septic tanks after the objection. Brindle then went on to describe defective water lines. Black testified that he was in charge of collecting rent, maintenance, and

leasing. He stated that the rent receipt books were "moderately" accurate; that the water lines were not properly attached at the faucets; and there was a great danger of the lines "breaking off at the main," causing the water to be cut off for repairs "several times" due to this fault.)

I would hold that the remaining portion of Brindle's deposition and Black's deposition were improperly admitted for purposes of determining damages after proper objection by J & K. Brindle and Black's deposition testimony was damaging to J & K as it presented evidence of bad workmanship and improper bookkeeping that supports Shenandoah's request for damages.

Having made the determination that this deposition testimony was improperly admitted, absent notice to J & K, and being unable to conclude that such admission was harmless error, I would sustain J & K's first point of error.

The judgment of the trial court should be reversed, and the cause remanded for a new trial.